Walter R. RIGDON, Plaintiff,

v.

BLUFF CITY TRANSFER & STORAGE
COMPANY, et al., Defendants.

No. CV–R–85–625–ECR.

United States District Court,
D. Nevada.

Sept. 25, 1986.

Patrick S. McGovern, Reno, Nev., for plaintiff.

Gary G. Bullis, Reno, Nev., for defendants.

## MEMORANDUM DECISION AND ORDER

EDWARD C. REED, Jr., Chief Judge.

Defendants Bluff City Transfer & Storage, Inc. ("Bluff City"), Atlas Van Lines, Inc. ("Atlas"), and Tenco Services, Inc. ("Tenco"), have moved for an order dismissing the complaint against them and quashing service of process pursuant to Fed.R.Civ.P. 12(b), claiming that this court lacks in personam jurisdiction. Points and authorities with accompanying affidavits have been submitted by both sides.[1]

FACTS

The plaintiff, Walter Rigdon, is a resident of Reno, Nevada. Bluff City and Tenco are both Tennessee corporations and have their principal place of business in that State. Atlas is an Indiana corporation, having its principal place of business in that State.

The complaint filed against the defendants sets forth three causes of action arising from the defendants alleged breach of contract.[2] In July of 1980, Bluff City, an

---

1. In its minute order of April 30, 1986, the Court held that it did not have the limited in personam jurisdiction over the defendants provided for by NRS § 14.065. Since that order, the Court has received additional materials, including plaintiff's affidavit. In light of these new materials and upon further consideration, the Court implements this order and vacates its order of April 30, 1986.

2. A similar complaint was previously brought in the Second Judicial District Court of Nevada in and for the County of Washoe, D.C. Action 85–1215. A motion to quash service was granted by the State court after it found that the motion was unopposed. Neither party has raised the issue of whether the State court's action bars this Court's reconsideration of this matter. Moreover, since the State court's decision is

agent of Atlas, entered into a service agreement with Rigdon. The contract was executed in Tennessee and by its terms was governed by Tennessee law.[3] It is unclear from the affidavits where the negotiations for the contract took place.

Pursuant to the contract, Rigdon ran a moving operation based in Reno, Nevada, as an independent contractor. Rigdon used his own vehicle and equipment and placed the name and logo of both Atlas and Bluff City thereon. Some of the shipments handled by Rigdon were interstate shipments that either originated or terminated in Nevada. Bluff City and Atlas sent moving materials and paperwork to Rigdon's Nevada address and telephoned Rigdon in Nevada to order and inquire about shipments. Rigdon also alleges that when the contract was executed, the defendants knew that Rigdon was a Nevada resident, that his business was located in Reno, and that his vehicle was licensed in Nevada.

The contract also obligated Bluff City and Atlas to provide worker's compensation benefits for Rigdon. Bluff City and Atlas contracted with the other defendants, including Tenco, to provide, broker and administer the plaintiff's worker's compensation insurance. That contract and the plaintiff's worker's compensation policy were entered into in Tennessee.

In July of 1983, Rigdon was injured outside Nevada while performing under the contract. From July of 1983 to October of 1984, Tenco and other defendants provided Rigdon with the benefits to which he was entitled under Nevada's workers compensation law through a Reno agent acting in their behalf. In October of 1984, Rigdon's benefits were terminated by the defendants. Rigdon alleges that he continues to be disabled from the accident and, therefore, his benefits were wrongfully terminated in breach of the contract.

None of the defendants own property or maintain an office in Nevada. Both Bluff City and Atlas, however, handle interstate shipments to and from Nevada. Atlas also provides moving services in Nevada through its Nevada agents, Puliz Moving and Storage and Southern Nevada Movers.

## DISCUSSION

The case of *Data Disc, Inc. v. Systems Tech. Assoc., Inc.*, 557 F.2d 1280 (9th Cir.1977) is instructive as to the procedure to be followed in deciding the instant motion. Where the court relies only on affidavits, the plaintiff need only make a prima facie showing of jurisdictional facts through the submitted materials to withstand a motion to dismiss. *Id.* at 1285. In other words, the affidavits need only demonstrate facts which support a finding of jurisdiction in order to avoid a motion to dismiss.

In evaluating the defendants' motion, a two-part inquiry is used; first, whether Nevada's long-arm statute applies and, if so, second, whether the application of the statute is consistent with due process. *Taubler v. Giraud*, 655 F.2d 991, 993 (9th Cir.1981). Nevada's statute is found at NRS § 14.065. Under NRS § 14.065, a nonresident must do one or more of the enumerated acts to be subject to the jurisdiction of the Nevada courts and the cause of action must arise from those acts. *Shapiro v. Pavlikowski*, 98 Nev. 548, 654 P.2d 1030, 1031 (1982); *Greenspun v. Del E. Webb Corp.*, 634 F.2d 1204, 1207 (9th Cir.1980); *Wells Fargo & Co. v. Wells Fargo Exp. Co.*, 556 F.2d 406, 417 (9th Cir.1977); *Pocahontas First Corp. v. Venture Planning Group, Inc.*, 572 F.Supp. 503, 506 (D.Nev.1983). The enumerated acts which potentially apply here are "[t]ransacting any business ... within this state," "[c]ommitting a tortious act within this state," and "[c]ontracting to insure any person, property or risk located

apparently not a final adjudication of the case, the Court finds that principles of res judicata and collateral estoppel do not apply.

**3.** The Court notes that the choice of law clause contained in the contract governs the "interpre-

tation" of the contract. Thus, it does not affect the determination of jurisdiction. Instead, under Fed.R.Civ.P. 4(f), federal courts in diversity actions apply the long-arm statute of the state in which they sit.

within this state at the time of contracting."

■ Courts that have addressed the issue have interpreted the enumerated acts requirement of Nevada's long-arm statute liberally. *Certain-Teed Products, Corp. v. Second Jud. Dist. Ct.*, 87 Nev. 18, 479 P.2d 781, 784 (1971); *Pocahontas, supra,* at 507. Both the Nevada Supreme Court and this Court have previously held that physical presence within Nevada is not required and that any purposeful act within the state may activate the statute. *Falen v. Cervi Livestock Co.*, 581 F.Supp. 885 (D.Nev. 1984) (court had jurisdiction over a defendant who knowingly shipped cattle to Nevada in a suit alleging that the cattle were infected with brucellosis); *Burns v. Second Jud. Dist. Ct.*, 97 Nev. 237, 627 P.2d 403 (1981) (California lessor was sued in Nevada in a case arising from an accident involving a leased vehicle. Despite the fact that both lessee and lessor were California residents when the lease was formed, jurisdiction was upheld because the lessor continued to accept payments after the lessee moved to Nevada and because the lessor required the lessee to register the vehicle and obtain insurance in Nevada in the lessor's name); *Certain-Teed, supra,* (foreign corporation that supplied allegedly defective roofing materials to a Nevada construction project had purposefully acted within Nevada and could be sued in the state courts for the consequences of its acts).

Decisions in other jurisdictions interpreting similar long-arm statutes also provide guidance. The Fifth Circuit Court of Appeals, for example, determined that the "[t]ransacts any business" language of the Georgia long-arm statute, which is found at Ga.Code Ann. § 24–113.1, "requires only that the defendant engage in a transaction as a result of some purposeful involvement with Georgia." *Gold Kist, Inc. v. Baskin-Robbins Ice Cream Co.*, 623 F.2d 375, 379 (5th Cir.1980). "Purposeful involvement"

was found in *Gold Kist* because the defendant had purposefully availed itself of business opportunities in Georgia by, *inter alia,* entering a contract with Georgia residents knowing that at least part of the performance would occur in that state. *Id.* at 380.

■ With respect to Tenco, the plaintiff asserts that Tenco wrote a policy and paid premiums under that policy for plaintiff knowing that he was a Nevada resident. Thus, Tenco would seem to fall within the scope of NRS § 14.065(2)(d). Tenco claims it is not subject to suit because the contract to administer Bluff City's worker's compensation matters and the worker's compensation policy it purchased were entered into in Tennessee. Tenco admits, however, that it paid Rigdon's benefits and medical charges in Nevada.[4] Although these facts are inadmissible to show fault, the Court may consider them in determining whether Tenco did one of the enumerated acts. The Court therefore finds that NRS § 14.065 applies as Tenco knowingly contracted to insure a Nevada resident.

■ With respect to Bluff City and Atlas, the Court disagrees that Nevada's only interest in the present dispute is that the plaintiff happens to live here. Bluff City and Atlas contracted with plaintiff knowing that he primarily operated out of Reno and that at least part of the contract would be performed in this state. It is highly probable that these defendants expected to profit from their relationship with an independent contractor in Nevada who could provide their services to Nevada residents. Moreover, by agreeing to provide a Nevada resident with worker's compensation coverage, and then allegedly breaching that agreement, Bluff City and Atlas purposefully acted in Nevada knowing that their actions would have an effect in Nevada. These contacts are clearly as significant as those in *Burns.* Finally, this dispute implicates Nevada's worker's compensation laws. Thus the State of Nevada has

---

**4.** It should be noted that Tenco claims that these benefits were paid pursuant to Tennessee's worker's compensation laws. The court finds, however, that the benefits were governed by Nevada's worker's compensation laws. *See* NRS § 616.520.

a direct interest in the resolution of this matter. In accordance with the authorities cited above, the Court finds that both Bluff City and Atlas "[t]ransacted business" in Nevada. It also finds that the "[t]ortious act" clause of NRS § 14.065 may apply as the plaintiff's third cause of action sounds in tort. Further, the Court finds that the plaintiff's causes of action arise from the same acts which create jurisdiction.

■ The Court must now address the constitutional issue. The basic rule is that in personam jurisdiction can only be asserted over a foreign corporate defendant that has "certain minimum contacts with [the forum] such that the maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.'" *International Shoe Co. v. Washington*, 326 U.S. 310, 316, 66 S.Ct. 154, 158, 90 L.Ed. 95 (1945), *quoting Miliken v. Meyer*, 311 U.S. 457, 463, 61 S.Ct. 339, 342–43, 85 L.Ed. 278 (1940). This rule assures that parties have "fair warning" as to where they may be subject to suit. *See Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 105 S.Ct. 2174, 2182, 85 L.Ed.2d 528 (1985). Thus, although forseeability of harm alone is not sufficient, the United States Supreme Court has stated that jurisdiction is proper where "the defendant's conduct and connection with the forum state are such that he should reasonably anticipate being haled into court there." *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 297, 100 S.Ct. 559, 567, 62 L.Ed.2d 490 (1980) (citations omitted).

If the nature of such contacts are "continuous" and "systematic" then general jurisdiction will exist. *Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 416, 104 S.Ct. 1868, 1873, 80 L.Ed.2d 404 (1984). Because the volume of business conducted by the defendants and their agents is apparently not sufficiently substantial to be "continuous" and "systematic", the Court finds that general jurisdiction does not exist.

Whether specific jurisdiction applies depends on an evaluation of the nature and quality of the defendants' contacts in rela-

tion to the cause of action. *Data Disc, supra,* at 1287. It is well established in this circuit that the following criteria are used in making this determination:

(1) The nonresident defendant must do some act or consummate some transaction with the forum or perform some act by which he purposefully avails himself of the privilege of conducting activities in the forum, thereby invoking the benefits and protections of its laws. (2) The claim must be one which arises out of or results from the defendants forum-related activities. (3) Exercise of jurisdiction must be reasonable.

*Id.* at 1287 (citations omitted).

■ This approach, however, and especially the "purposeful availment prong," has been modified by recent United States Supreme Court decisions. *Haisten v. Grass Valley Medical*, 784 F.2d 1392, 1398 (9th Cir.1986). In *Calder v. Jones*, 465 U.S. 783, 789–90, 104 S.Ct. 1482, 1487, 79 L.Ed.2d 804 (1984), for example, the Court allowed the exercise of jurisdiction over a defendant whose only "contact" with the forum was to knowingly cause injury in the forum state through a foreign act. Moreover, jurisdiction may be exercised with a lesser showing of minimum contact than would otherwise be required if considerations of reasonableness dictate. *Burger King, supra,* at 2184 (1985). Finally, a presumption of reasonableness attaches when a plaintiff demonstrates that a defendant has "purposefully directed his activities" toward forum residents, and to defeat jurisdiction that defendant must present "a compelling case that the presence of some other considerations would render jurisdiction unreasonable." *Id.* at 2185; *Haisten, supra,* at 1398.

1. *Act Requirement*

There is a large body of law interpreting the "purposeful availment" requirement. This requirement ensures that jurisdiction will not be based solely on "random," "fortuitous," or "attenuated" contacts, *Keeton v. Hustler Magazine, Inc.*, 465 U.S. 770, 104 S.Ct. 1473, 79 L.Ed.2d 790 (1984);

*Woodson, supra,* 444 U.S. at 299, 100 S.Ct. at 568; or on the "unilateral activity of another party or third person." *Helicopteros, supra,* 466 U.S. at 417, 104 S.Ct. at 1873; *Kulko v. Superior Court,* 436 U.S. 84, 93, 98 S.Ct. 1690, 1697, 56 L.Ed.2d 132 (1978). Instead, jurisdiction will exist where a defendant enters into an obligation which she knows will have effect in the forum state or who delivers products into the stream of commerce with the expectation that they will be purchased by consumers in the forum state. *See Calder, supra,* 465 U.S. at 789–90, 104 S.Ct. at 1487; *Keeton, supra,* 465 U.S. at 781, 104 S.Ct. at 1482; *Woodson, supra,* 444 U.S. at 298, 100 S.Ct. at 567–68; *Haisten, supra,* at 1399. If so, physical entry into the forum is not required. *Burger King, supra,* at 2184.

Several cases have discussed whether a foreign corporation's contract with a forum resident establishes sufficient contacts. Although the contract alone does not automatically suffice, "purposeful availment" may be based on the "prior negotiations and contemplated future consequences, along with the terms of the contract and the parties' actual course of dealing ..." *Burger King, supra,* at 2186. In *Burger King,* the Court emphasized the fact that the defendant had deliberately reached out beyond its home state in order to gain the benefits of an affiliation with an enterprise known to be based primarily in another state. *Id.* at 2186. *See also Flynt Distribution Co., Inc. v. Harvey,* 734 F.2d 1389, 1393 (9th Cir.1984) (Although distribution agreement was negotiated and executed in New York, the defendants knew that they were dealing with a California corporation and intended to have their magazine distributed nationwide. Therefore, the defendants had "purposefully availed" themselves of business opportunities in California and could be sued there for breach of the agreement).

The Supreme Court has also held that where individuals "purposefully derive benefit" from their interstate activities, "it may well be unfair to allow them to escape having to account in other states for conse-quences that arise proximately from such activities; the Due Process Clause may not readily be wielded as a territorial shield to avoid interstate obligations that have been voluntarily assumed." *Burger King, supra,* at 2183, *citing Kulko v. California, supra,* at 96. *See also McGee v. International Life Insurance Co.,* 355 U.S. 220, 223, 78 S.Ct. 199, 201, 2 L.Ed.2d 223 (1957).

In this case, Bluff City and Atlas knew that they were dealing with an enterprise primarily based in Nevada and intended to have their moving services provided in Nevada and other states by Rigdon. Moreover, these defendants sent forms and moving materials to Rigdon in Nevada, telephoned him there and asked him to carry loads to and from Nevada. All three defendants arranged to have Rigdon insured and to have his worker's compensation benefits paid through a Nevada agent. It is clear that the defendants intended to derive benefits from their relationship with Rigdon. Having accepted the benefits, the defendants must also accept the obligations. Therefore, although the contract involved here was not as detailed nor as long-term as the one in *Burger King,* this Court has no difficulty in finding that the defendants "purposefully directed" their activities toward Nevada residents. Thus, the exercise of jurisdiction is at least presumptively reasonable.

### 2. *Arising Out of Forum-Related Activities*

Rigdon claims that the defendants have breached their contract with him by terminating his worker's compensation benefits. As discussed above, the contract and the furnishing of coverage thereunder are the defendants relevant contacts with Nevada. Thus, the cause of action arises out of the defendants' forum-related activities.

### 3. *Reasonableness*

The defendants have not pointed to other factors that persuasively outweigh the considerations above. The reasonableness factors to be considered are "the burden on

the defendant," "the forum state's interest in adjudicating the dispute," "the plaintiff's interest in obtaining convenient and effective relief," "the interstate judicial system's interest in obtaining the most efficient resolution of the controversies," and the "shared interest of the several states in furthering fundamental social policies." *Woodson, supra,* 144 U.S. at 292, 100 S.Ct. at 564.

The defendant claims that jurisdiction is unreasonable, pointing to its list of witnesses. While it is true that all five witnesses are from Tennessee and Indiana, and are employed by the defendants, this factor is not decisive. The plaintiff has stated that his witnesses are largely Nevada residents and, in the absence of a contrary showing by the defendants, the Court is inclined to believe that the most important witnesses at trial will be the local doctors who treated the plaintiff and the insurance agents and investigators involved in the case. Moreover, the plaintiff states that because of his injury, it would be very difficult for him to pursue his case in Tennessee. Thus, the plaintiff has a strong interest in obtaining effective relief and any inconvenience caused the defendant does not reach constitutional magnitude. *See Burger King, supra,* at 2188.

Furthermore, Nevada has a strong interest in providing a forum for its residents when their insurers refuse to pay claims. *Haisten, supra,* at 1401, *citing McGee v. International Life Insurance Co., supra,* 355 U.S. at 223, 78 S.Ct. at 201 (1957). Nevada also has an interest in the administration of its worker's compensation laws. Although the defendants claim that Tennessee's worker's compensation laws are at issue, that does not seem to be the case since Rigdon is a Nevada resident.[5] Also, since the defendants' acts allegedly injured Rigdon in Nevada, "it is beyond dispute that [Nevada] has a significant interest in redressing injuries that actually occur within the state." *Keeton, supra,* 465 U.S. at 776, 104 S.Ct. at 1479. In contrast, the Court does not see any serious conflict with the sovereignty of Tennessee even though the contract is governed by Tennessee law.

Lastly, there is no reason why this Court cannot provide an efficient resolution of this case.

CONCLUSION

The Court finds that the exercise of jurisdiction is reasonable in this case.

IT IS, THEREFORE, HEREBY ORDERED that defendants' motion to dismiss for lack of personal jurisdiction is DENIED.