817 F.2d 1416
 55 USLW 2685
 Scott Alan LAKE and Cathy Lake, husband and wife, and Scott
Alan Lake as Guardian Ad Litem on behalf of the
Minor Child Brian Robert Lake,
Plaintiffs- Appellants,
v.
Diane Marie LAKE, now known as Diane Marie Klymciw, Defendant,
Steven C. Taylor, Attorney at Law, Defendant-Appellee.
 No. 85-4414.
 United States Court of Appeals,
Ninth Circuit.
 Argued and Submitted Dec. 4, 1986.
Decided May 26, 1987.
 
 Patricia B. Urquhart, Boise, Idaho, for plaintiffs-appellants.
 John P. Howard, Boise, Idaho, for defendant-appellee.
 Appeal from the United States District Court for the District of Idaho.
 Before BROWNING, WRIGHT, and BOOCHEVER, Circuit Judges.
 BOOCHEVER, Circuit Judge:
 
 
 1
 Scott Lake, Cathy Lake, and Scott Lake, as guardian ad litem for the minor child Brian Lake (the Lakes), appeal the district court's order dismissing Stephen C. Taylor based on a lack of personal jurisdiction. Because the Lakes made an adequate showing that Taylor purposefully availed himself of the services of the Idaho authorities and that the Lakes' claim arises out of that conduct, we reverse.BACKGROUND
 
 
 2
 Scott Lake is Brian's natural father, Cathy Lake is his stepmother, and Diane Klymciw, formerly Diane Lake, is Brian's natural mother. The California Superior Court entered an interlocutory Judgment of Dissolution of Marriage awarding Scott Lake the care, custody, and control of Brian Lake with visitation rights to Diane Klymciw. Shortly after the December hearing on the interlocutory decree of divorce, Diane retained attorney Stephen C. Taylor of Los Angeles County, California. Taylor moved to set aside the custody provisions of the interlocutory decree.
 
 
 3
 After a hearing, the court amended the decree to provide for joint legal custody over Brian. The court left Brian in his father's physical custody and Diane was given visitation rights. The Lakes then moved with Brian to Washington. The final decree of dissolution was entered leaving Brian Lake in the custody of Scott Lake. Around November 1978 the Lakes moved to San Diego, California. Scott later enlisted in the United States Air Force and, as a result, the Lakes took up residence near Mountain Air Force Base, Idaho, in August of 1979. During this time, Diane may have lost touch with the Lakes.
 
 
 4
 In 1980, Diane contacted Hour Magazine, a television program, which was interested in producing a segment on the recovery of kidnapped children. Hour Magazine put Diane in contact with attorney Andrew Yankwitt, who was associated with the Citizens' League on Custody and Kidnapping. Yankwitt hired a private investigator who, in January or February 1981, located the Lakes at Mountain Home Air Force Base in Boise, Idaho. On February 25, 1981, in order to aid Diane in securing physical custody of Brian from the Lakes in Idaho, Taylor obtained an ex parte order from the Los Angeles Superior Court awarding temporary custody of Brian to Diane. On March 3, 1981, Diane and Yankwitt went to Idaho, and by using the ex parte order, secured the assistance of the district attorney's office and the Idaho sheriff's department to take custody of Brian. The sheriff made contact with the air force base officials and secured permission to enter the base for the purpose of executing the ex parte order. Scott was ordered by the air force officers to report to the base legal office where he was detained. The air force officers authorized the release of Brian from school. Brian was taken off the base. Scott was subsequently served with the ex parte order. One month later, Diane relinquished custody of Brian to Scott.
 
 
 5
 The Lakes filed suit alleging numerous tort claims against the parties involved in taking custody of Brian. Taylor moved to dismiss the action over him on the basis that the district court lacked personal jurisdiction. The court granted Taylor's motion. The Lakes appeal.
 
 UNIFORM CHILD CUSTODY JURISDICTION ACT
 
 6
 The Uniform Child Custody Jurisdiction Act (UCCJA) is in effect in both California and Idaho. Cal.Civ.Code Secs. 5150-74 (Deering 1984); Idaho Code Secs. 32-1101 to 1126 (1983). The UCCJA determines the proper state forum for litigation of custody disputes. The California court's jurisdiction to issue the ex parte order of February 25, 1981, depended upon compliance with the requirements of the UCCJA.
 
 
 7
 Our decision does not necessitate a detailed analysis of the jurisdictional requirements of the UCCJA. Taylor was aware that California and Idaho had adopted the UCCJA in some form. The Lakes contend that Taylor knew that Brian and his father resided in Idaho for at least sixteen months prior to February 1981. They allege that Taylor failed to disclose this fact to the court in obtaining the February 1981 ex parte order even though Taylor knew that this information would prevent the California court from asserting jurisdiction under the UCCJA. Taylor intended the decree to be used to secure the assistance of the appropriate authorities in Idaho. The issue on appeal is whether Taylor's conduct in procuring the ex parte order, intended to be used in Idaho, is sufficient contact to allow Idaho to establish personal jurisdiction over Taylor.DISCUSSION
 
 I. Personal Jurisdiction
 A. Standard of Review
 
 8
 The district court decided the issue of its personal jurisdiction over Taylor on the basis of affidavits and written discovery materials: thus, the Lakes needed to make only a prima facie showing of jurisdictional facts in order to avoid the motion to dismiss. Data Disc, Inc. v. Systems Technology Assocs., Inc., 557 F.2d 1280, 1285 (9th Cir.1977). Because the court made no findings on the disputed facts, we review the materials presented de novo to determine if plaintiff has met the burden of showing a prima facie case of personal jurisdiction. Brand v. Menlove Dodge, 796 F.2d 1070, 1072 (9th Cir.1986). All factual disputes are resolved in the plaintiffs' favor. Id.; Fields v. Sedgwick Associated Risks, Ltd., 796 F.2d 299, 301 (9th Cir.1986). Presenting a prima facie case of jurisdiction, however, does not necessarily guarantee jurisdiction over the defendant at the time of trial. The district court has the discretion to take evidence at a preliminary hearing in order to resolve any questions of credibility or fact that arise subsequent to this appeal. If such an event arises, plaintiff, being put to full proof, "must establish the jurisdictional facts by a preponderance of the evidence, just as he would have to do at trial." Data Disc, 557 F.2d at 1285.
 
 B. Idaho's Jurisdiction
 
 9
 In order to establish the existence of personal jurisdiction in a diversity case, the plaintiff must show (1) that the statute of the forum confers personal jurisdiction over the nonresident defendant, and (2) that the exercise of jurisdiction accords with federal constitutional principles of due process. Haisten v. Grass Valley Medical Reimbursement Fund, Ltd., 784 F.2d 1392, 1396 (9th Cir.1986). The Idaho long-arm statute provides that a person is subject to personal jurisdiction if, among other things, he transacts business or commits a tortious act in Idaho and the alleged cause of action arises from that transaction or act. Idaho Code Sec. 5-514 (1979). The Idaho legislature, in adopting that statute, intended to exercise all the jurisdiction available to the State of Idaho under the due process clause of the United States Constitution. Doggett v. Electronics Corp. of Am., 93 Idaho 26, 30, 454 P.2d 63, 67 (1969). Thus, the state and federal limits are coextensive, Data Disc, 557 F.2d at 1286, and we must decide whether the exercise of jurisdiction here accords with constitutional principles of due process.
 
 C. Due Process Test
 
 10
 The due process clause of the fourteenth amendment ensures the fair and orderly administration of laws while preventing binding state judgments against defendants with which the forum has "no contacts, ties, or relations." International Shoe Co. v. Washington, 326 U.S. 310, 319, 66 S.Ct. 154, 160, 90 L.Ed. 95 (1945). Due process is satisfied when jurisdiction is asserted over a defendant who has certain minimum contacts with the forum state such that the maintenance of the action does not offend the "traditional notions of fair play and substantial justice." Milliken v. Meyer, 311 U.S. 457, 463, 61 S.Ct. 339, 343, 85 L.Ed. 278 (1940). This in turn "gives a degree of predictability to the legal system that allows potential defendants to structure their primary conduct with some minimum assurance as to where that conduct will and will not render them liable to suit." World-Wide Volkswagen Corp. v. Woodson, 444 U.S. 286, 297, 100 S.Ct. 559, 567, 62 L.Ed.2d 490 (1980). In determining personal jurisdiction, we focus primarily on "the relationship among the defendant, the forum, and the litigation." Shaffer v. Heitner, 433 U.S. 186, 204, 97 S.Ct. 2569, 2580, 53 L.Ed.2d 683 (1977).
 
 
 11
 A state may exercise either general or specific jurisdiction over a defendant. If a defendant's activities within the forum state are "continuous and systematic" or "substantial," the state has a sufficient relationship with the defendant to assert general jurisdiction. Perkins v. Benguet Consol. Mining Co., 342 U.S. 437, 445, 447, 72 S.Ct. 413, 418, 419, 96 L.Ed. 485 (1952). If, however, a forum state cannot assert general jurisdiction over the defendant, it may still assert specific jurisdiction depending on the quality and nature of the defendant's contacts with the forum state in relation to the cause of action. Data Disc, 557 F.2d at 1287.
 
 
 12
 We use a tripartite analysis in determining specific jurisdiction: (1) the nonresident defendant must purposefully direct his activities or consummate some transaction with the forum or residents thereof; or perform some act by which he purposefully avails himself of the privilege of conducting activities in the forum, thereby invoking the benefits and protections of its laws; (2) the claim must be one which arises out of or relates to the defendant's forum-related activities; and (3) the exercise of jurisdiction must comport with fair play and substantial justice, i.e. it must be reasonable. Haisten, 784 F.2d at 1397; see Burger King Corp. v. Rudzewicz, 471 U.S. 462, 472-76, 105 S.Ct. 2174, 2181-84, 85 L.Ed.2d 528 (1985).
 
 
 13
 The first step of the specific jurisdiction analysis involves a qualitative evaluation of the defendant's contact with the forum state. Specifically, we look for "some act by which the defendant purposefully avails itself of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws." Hanson v. Denckla, 357 U.S. 235, 253, 78 S.Ct. 1228, 1240, 2 L.Ed.2d 1283 (1958). This purposeful availment requirement is the test for the fundamental determination of whether "the defendant's conduct and connection with the forum State are such that he should reasonably anticipate being hauled into court there." World-Wide Volkswagen, 444 U.S. at 297, 100 S.Ct. at 567; see Haisten, 784 F.2d at 1397.
 
 
 14
 The purposeful availment requirement is based on the presumption that it is not unreasonable to require a defendant who purposefully conducts business in a state, thereby using the benefits and protections of the forum state's laws, "to submit to the burdens of litigation in that forum as well." Burger King, 471 U.S. at 476, 105 S.Ct. at 2184. Jurisdiction may not be avoided by a lack of physical contact with the forum state. Indeed, the Supreme Court has upheld the assertion of jurisdiction over a defendant whose efforts were "intentionally directed" towards the forum state when there was no physical contact relating to the claim. Calder v. Jones, 465 U.S. 783, 790, 104 S.Ct. 1482, 1487, 79 L.Ed.2d 804 (1984). Nevertheless, a defendant may not be haled into a jurisdiction as the result of random, fortuitous or attenuated contacts or based upon the unilateral acts of third parties. Burger King, 471 U.S. at 475, 105 S.Ct. at 2183; Brand, 796 F.2d at 1074.
 
 
 15
 Part two of our analysis requires that the litigation arise out of or relate to the defendant's forum-related activities. This step explores the relationship between the cause of plaintiff's harm and the defendant's acts identified as creating purposeful contacts with the forum state. On one extreme, no relationship is needed between the defendant's purposeful contacts and the cause of action where the contacts are substantial or continuous and systematic and therefore permit the assertion of general jurisdiction. International Shoe, 326 U.S. at 318, 66 S.Ct. at 159. On the other side of the spectrum, a high degree of relationship is needed where there is only one contact with the forum state. In order to support jurisdiction with only one forum state contact, the cause of action must arise out of that particular purposeful contact of the defendant with the forum state. McGee v. International Life Ins. Co., 355 U.S. 220, 223, 78 S.Ct. 199, 201, 2 L.Ed.2d 223 (1957).
 
 
 16
 Once "minimum contacts" by the defendant have been established, our final duty involves considering several factors such that the maintenance of the action does not "offend 'traditional notions of fair play and substantial justice.' " International Shoe, 326 U.S. at 316, 66 S.Ct. at 158 (quoting Milliken v. Meyer, 311 U.S. at 463, 61 S.Ct. at 343); see Haisten, 784 F.2d at 1400. In other words, the assertion of jurisdiction must be reasonable. Id. We evaluate seven factors to determine the reasonableness of a forum's exercise of jurisdiction: (1) the burden on the defendant, (2) existence of an alternative forum, (3) convenient and effective relief for the plaintiff, (4) the forum state's interest in adjudicating the suit, (5) efficient resolution of the controversy, (6) purposeful interjection, and (7) conflicts with sovereignty. Brand, 796 F.2d at 1075; Pacific Atlantic Trading Co. v. The M/V Main Express, 758 F.2d 1325, 1329-31 (9th Cir.1985). "These considerations sometimes serve to establish the reasonableness of jurisdiction upon a lesser showing of minimum contacts than would otherwise be required." Burger King, 471 U.S. at 477, 105 S.Ct. at 2184; see Brand, 796 F.2d at 1074. A defendant with established minimum contacts must show that these considerations render jurisdiction unreasonable in order to defeat jurisdiction. Burger King, 471 U.S. at 477-78, 105 S.Ct. at 2184-85; see Fields, 796 F.2d at 302.
 
 D. Application
 
 17
 Taylor did not have substantial or continuous and systematic contacts with Idaho. Accordingly, there is no basis upon which Idaho can exercise general jurisdiction over him. Moreover, Taylor has not consented to Idaho jurisdiction. Our inquiry thus turns upon whether Idaho can assert specific jurisdiction over Taylor in accordance with the notions of due process.
 
 
 18
 Taylor argues that he fails to meet the purposeful availment requirement of our specific jurisdiction analysis. In support of his contention he cites Wright v. Yackley, 459 F.2d 287 (9th Cir.1972). In Wright, a South Dakota doctor wrote a prescription, permitting unlimited refills, for a patient that he had treated in South Dakota. The patient later moved to Idaho and sought to have the prescription refilled at an Idaho drugstore. The druggist required confirmation of the prescription from the doctor. The patient wrote to the doctor, who, without charge, furnished copies of the original prescription. The patient brought suit in Idaho alleging injury from the use of the drugs. Id. at 288.
 
 
 19
 We held that the assertion of jurisdiction was unreasonable, and that the doctor did not purposefully avail himself of the privileges of the forum state. Further, we noted that these circumstances were not "comparable to acts performed by a nonresident for the very purpose of having their consequences felt in the forum state." Id. at 290.
 
 
 20
 The Supreme Court in Calder recently affirmed the assertion of jurisdiction over a defendant whose intentional conduct in a foreign state was calculated to cause injury to plaintiff in the forum state. Jones brought suit in California claiming that she had been libeled by an article written and edited in Florida. Calder was the editor of the national publication. He approved the initial evaluation of the subject and edited the article in its final form. Calder only visited California twice; once on a pleasure trip prior to the article's publication and once to testify at an unrelated trial. 465 U.S. at 784-86, 104 S.Ct. at 1484-85. Calder analogized himself to a welder employed in Florida who works on a boiler that subsequently explodes in California. The Court distinguished between the general untargeted negligence of the hypothetical welder and the allegedly tortious actions by Calder expressly aimed at the forum state. Calder knew the potentially devastating impact of the article upon Jones. He knew that the brunt of any injury would be felt in the state where Jones lived and worked and in which the publication had its largest circulation. The Court stated that under these circumstances Calder must "reasonably anticipate being haled into court there" to answer for the statements made in the article. Id. at 789-90, 104 S.Ct. at 1486-87 (quoting World-Wide Volkswagen Corp., 444 U.S. at 297, 100 S.Ct. at 567). The Court held that "jurisdiction over petitioners in California is proper because of their intentional conduct in Florida calculated to cause injury to respondent in California." Id. at 791, 104 S.Ct. at 1488.
 
 
 21
 Taylor argues that his rendition of legal services does not constitute purposeful availment of Idaho laws. He contends that to so characterize his conduct would subject any attorney to jurisdiction in any state in which a court order might foreseeably be granted full faith and credit. Taylor misconceives the significance of his actions. Taylor's acts amount to more than the untargeted negligence of the hypothetical welder discussed in Calder.
 
 
 22
 The Lakes allege Taylor knew that they were in Idaho and that they had been there for sixteen months before he obtained the ex parte order in California. They also contend that Taylor knew Diane and Yankwitt would take the order to Idaho in attempting to gain custody of Brian and that Taylor intended Diane and Yankwitt to use the order to obtain the assistance of the appropriate authorities there. The Idaho sheriff's department, the air force personnel, and the prosecutor's office specifically relied on the order for the authority to remove Brian from Scott and Cathy's custody. Unlike Wright, those allegations, if proved, establish that Taylor took those actions "for the very purpose of having their consequences felt in the forum state." Wright, 459 F.2d at 290. Accordingly, Idaho could properly exercise jurisdiction over the defendant "whose only 'contact' with the forum state is the 'purposeful direction' of a foreign act having effect in the forum state." Haisten, 784 F.2d at 1397 (citing Calder, 465 U.S. at 789, 104 S.Ct. at 1487). Under the intentional direction analysis, Taylor intended a foreign act, obtaining the California ex parte order, to have an effect in the forum state of Idaho.
 
 
 23
 Under the second prong of our analysis, we need to determine the extent of the relationship between Taylor's "purposeful contacts" and the Lakes' claim. The Lakes allege that by procuring the California court order based on less than full disclosure of all the information he possessed, Taylor became a joint tortfeasor in the wrongful recovery of Brian. Diane and Yankwitt secured physical custody over Brian by use of the order. The Lakes' claim directly arises out of the execution of that ex parte order. We hold that the alleged injury to the Lakes arose out of Taylor's acts in procuring the ex parte order, thereby satisfying the second part of the specific jurisdiction test.
 
 
 24
 The final consideration involves whether the establishment of minimum contacts and the resulting assertion of jurisdiction conforms with the overall notions of fair play and substantial justice. According to the Lakes' allegations, Taylor purposely established minimum contacts with Idaho. He thus "must present a compelling case that the presence of some other considerations would render jurisdiction unreasonable." Burger King, 471 U.S. at 477, 105 S.Ct. at 2184. Taylor has not made such a showing. We cannot deny that Idaho has a manifest interest in providing an effective means of reparation for its residents tortiously injured by others. This is especially true in view of Taylor's purposeful direction of his efforts in procuring the ex parte order to take advantage of Idaho's laws and authorities. Further, there are no problems with respect to the efficient resolution of the controversy, conflicts of sovereignty, or an unusually heavy burden on the defendant that renders the assertion of jurisdiction unreasonable. We note that whenever a defendant is made to answer in a state other than his or her residence, an element of hardship exists. Under the circumstances of this case, however, that hardship does not rise to a violation of due process.
 
 
 25
 Taylor's last contention is that any wrongful act committed by an attorney is properly addressed by that attorney's state bar or the courts before which that attorney practices. This procedure would indeed resolve some of the problems created by an unscrupulous attorney. The procedure, however, fails to consider properly the interest of the victim injured by an attorney's tortious conduct. Furthermore, Taylor's argument adds nothing whatsoever to the analytical process of determining whether a particular assertion of personal jurisdiction is consistent with the defendant's right to due process. Idaho's assertion of jurisdiction does not offend notions of fair play and substantial justice simply because there is another available forum.
 
 II. Waiver
 
 26
 Taylor argues that the Lakes waived the right to appeal the issue of the Idaho court's personal jurisdiction over him because they cited no legal authority to support their contention that the court had personal jurisdiction. Taylor's argument is without merit. It is well established that we will review an issue not raised below only in exceptional circumstances, such as the prevention of manifest injustice. International Union of Bricklayers & Allied Craftsman Local Union No. 20 v. Martin Jaska, Inc., 752 F.2d 1401, 1404 (9th Cir.1985). Taylor raised the issue of a lack of personal jurisdiction in the trial court. The Lakes responded. The district court decided, as set forth in its Order of October 29, 1985, that there was no personal jurisdiction over Taylor. Taylor cannot prevent the Lakes from arguing an issue that he raised and to which the Lakes properly responded. Nor can Taylor prevent the Lakes from citing additional case law and strengthening their argument. Thus, we reject Taylor's argument that the Lakes waived the right to appeal the issue of personal jurisdiction.
 
 CONCLUSION
 
 27
 We hold that the Lakes have made out a prima facie case for personal jurisdiction over the attorney Taylor based upon allegations that he tortiously obtained process with the intention that it would be employed in the State of Idaho in the manner in which it was used. Accordingly, we reverse the order of the district court and remand for further proceedings consistent with this opinion. Taylor's request for attorneys' fees is denied.
 
 
 28
 REVERSED and REMANDED.
 
 
 29
 EUGENE A. WRIGHT, Circuit Judge, concurring specially:
 
 
 30
 I write separately to emphasize the narrowness of today's holding. Our court's recent decisions have required "affirmative conduct by the defendant which allows or promotes the transaction of business within the forum state", Decker Coal Co. v. Commonwealth Edison Co., 805 F.2d 834, 840 (9th Cir.1986), or "affirmative conduct [by the defendant] to deliver [a] product to [the forum state]", Brand v. Menlove Dodge, 796 F.2d 1070, 1075 (9th Cir.1986). Actual knowledge that a product will reach the forum state, without more, will not subject a defendant to personal jurisdiction. Id.
 
 
 31
 In my view, the Lakes on remand must prove by a preponderance of the evidence that Taylor deliberately concealed facts before the California courts while intending the ex parte order to be used in Idaho. See Calder v. Jones, 465 U.S. 783, 791, 104 S.Ct. 1482, 1488, 79 L.Ed.2d 804 (1984). Then, and only then, are the requirements of Decker Coal and Brand satisfied so that jurisdiction over Taylor exists in the United States District Court for the District of Idaho.