**Larae Bunting KUMARELAS, Plaintiff,**

v.

**Harriet KUMARELAS, individually and in her capacity as successor trustee of the John James Kumarelas Trust Dated July 24, 1996, et al., Defendants.**

No. CV–S–97–1942–DWH(LRL).

United States District Court,
D. Nevada.

Sept. 4, 1998.

Melvin D. Close, Diana L. Sullivan, Jones Vargas, Las Vegas, NV, for Plaintiff.

Ralph L. Denton, Mark R. Denton, Joseph A. Lopez, Denton & Denton, Ltd., Las Vegas, NV, for Defendants.

## ORDER

HAGEN, District Judge.

Defendant Harriet Kumarelas's ("Harriet's") motion (# 6) to dismiss plaintiff's complaint for lack of jurisdiction under Fed. R.Civ.P. 12(b)(2), or, in the alternative, to dismiss or transfer under Fed.R.Civ.P. 12(b)(3) came before the court on September 3, 1998 at 4:00 p.m.

## I. *Factual Background*

On November 19, 1997, plaintiff filed a complaint against defendant in Nevada state court. On December 31, 1997, defendant removed to federal court based upon diversity jurisdiction. Plaintiff is a Nevada resident and defendant is a resident of California. Defendant's Aff. (attached as Exh. A to Defendant's Motion (# 6)) ¶ 1; Plaintiff's Aff. (attached as Exh. 1 to Plaintiff's Opp. (# 12)) ¶ 1. Plaintiff is the surviving spouse of John Kumarelas, who died in California on September 1, 1997. Plaintiff's Aff. ¶ 2. Plaintiff and the decedent were married first in August of 1964 but divorced three months later. *Id.* ¶ 3. In January 1995, plaintiff and the decedent were married for a second time in Boulder City, Nevada. *Id.*

In May 1996, plaintiff and the decedent entered into an agreement by which each would designate the other as a beneficiary of a portion of their estate. *Id.* ¶ 4. On July 24, 1996, the decedent executed a living trust in Boulder City, Nevada. *Id.* ¶¶ 5–6. The trust named his sister, defendant Harriet Kumarelas, and plaintiff as successor co-trustees. *Id.* ¶ 7. It also designated his niece, Jeanine Kumarelas, and nephew, James Kumarelas, as beneficiaries of distribution from the trust of residential property in Oakland, California and commercial property in Utah. Complaint ¶ 9. Under the trust, plaintiff would receive the decedent's right to a promissory note and deed of trust for commercial property in Oakland, California and the remainder of the trust estate. *Id.* The trust also provided that if plaintiff predeceased the decedent, defendant would receive plaintiff's share of the trust estate. Plaintiff's Aff. ¶ 7. On the same day, plaintiff executed an amendment to her existing living trust which named the decedent as a beneficiary under the trust and entitling him to her vehicles and net income of the trust upon her death. Complaint ¶¶ 10–11; Plaintiff's Aff. ¶¶ 8–9.

Early in January 1997, the decedent traveled to Oakland, California for surgery and medical care. Plaintiff's Aff. ¶ 10. On January 16, 1997, the decedent executed a First Amendment to his trust by which he revoked most of the distributive provisions in the trust for plaintiff and made new substantial distributive provisions for defendant and defendant's two children. Complaint ¶¶ 12–14; Plaintiff's Aff. ¶ 11. This amendment also named defendant as sole successor trustee. *Id.* That same day plaintiff arrived in Oakland to be with the decedent during his surgery which was scheduled for the following day. Plaintiff's Aff. ¶ 10. Plaintiff contends that the decedent executed the First Amendment as the result of undue influence and coercion by defendant. *Id.* ¶ 12.

During the early part of 1997, plaintiff and the decedent traveled to Utah four times and to Germany for a five-week stay to seek help for the decedent's medical condition. Plaintiff's Aff. ¶ 12. They also made periodic visits to Boulder City, Nevada. In March 1997, plaintiff and the decedent temporarily rented an apartment in Alameda, California so that the decedent could be near his doctors and the hospital. *Id.* ¶ 13.

On August 18, 1997, the decedent was admitted to the hospital in Alameda, California with chest pains. *Id.* ¶ 14. While at the hospital he confessed to plaintiff that he had executed the First Amendment to his trust before his surgery in January but wanted to change it back. *Id.* On August 19, 1997, the decedent communicated his intent to his Boulder City attorney and requested that an amendment be prepared to revoke the First Amendment. *Id.* ¶ 15. On August 20, 1997, the decedent executed the Second Amendment to the trust in his hospital room revoking the First Amendment and reaffirming the distribution of estate property as described in his original trust instrument. *Id.* ¶ 16. On August 22, 1997, the decedent executed a Third Amendment to his trust in his hospital room revoking the Second Amendment and republishing the First Amendment. *Id.* ¶¶ 17–19. On September 1, 1997, the decedent died and thereafter plaintiff returned to Boulder City, Nevada. *Id.* ¶¶ 21, 23.

Plaintiff alleges that at the time decedent executed the Third Amendment he lacked the legal capacity to amend his trust because he was under heavy medication, including morphine. In addition, she alleges that the decedent executed the Third Amendment as

the result of undue influence and coercion by Mary Mousalimas, another sister of the decedent, and Julias Kahn, the California attorney who prepared the First and Third Amendments. Complaint ¶¶ 28, 30; Plaintiff's Aff. ¶ 18. Plaintiff contends that Mary Mousalimas and Julias Kahn acted at the direction of defendant. Complaint ¶ 52.

On January 12, 1998, defendant filed this motion (# 6) to dismiss under Fed.R.Civ.P. 12(b)(2) for lack of personal jurisdiction or, in the alternative, to dismiss or transfer under Fed.R.Civ.P. 12(b)(3) and 28 U.S.C. § 1406 for lack of proper venue. Plaintiff opposed (# 12) the motion and defendant replied (# 14). On March 10, 1998, plaintiff filed a request (# 15) for oral argument on defendant's motion.

## II. *Analysis*

### A. Motion to Dismiss Under Fed.R.Civ.P. 12(b)(2)

■ Although defendant is the moving party on a motion to dismiss, plaintiff has the burden of establishing jurisdiction exists because plaintiff is the party invoking the court's jurisdiction. *Data Disc, Inc. v. Systems Technology Associates, Inc.*, 557 F.2d 1280, 1285 (9th Cir.1977). Where a court accepts affidavits and discovery materials in connection with a motion to dismiss, plaintiff need only make a prima facie showing of jurisdictional facts to avoid defendant's motion to dismiss. *Id.* In deciding whether a prima facie case has been made, uncontroverted allegations in the complaint are deemed true. See *id.* at 1284. If plaintiff makes a prima facie showing, the court can either assume jurisdiction and permit plaintiff to go to trial on the merits (where she must prove the jurisdictional facts by a preponderance of evidence), or require plaintiff to prove the jurisdictional facts by a preponderance of the evidence at a preliminary hearing. *Id.* at 1289 & n. 5. Here, both sides submitted affidavits in connection with the motion to dismiss, but there are not any disputed issues of material fact which would warrant a full evidentiary hearing prior to trial. See *id.* at 1285.

■ To establish that personal jurisdiction over defendant is proper, plaintiff must show (1) that the long-arm statute of the forum confers personal jurisdiction over the nonresident defendant and (2) that the exercise of jurisdiction accords with the federal constitutional principles of due process. *Haisten v. Grass Valley Medical Reimbursement Fund, Ltd.*, 784 F.2d 1392 (9th Cir.1986). Here, because Nevada's long-arm statute permits the exercise of jurisdiction to the same extent as the United States Constitution, the state and federal limits are coextensive. See N.R.S. § 14.065; *Rigdon v. Bluff City Transfer & Storage Co.*, 649 F.Supp. 263 (D.Nev. 1986).

■ In this case, plaintiff is not claiming that this court has general jurisdiction over defendant but rather that this court has specific jurisdiction over defendant. The Ninth Circuit has established a three-part test to determine whether specific jurisdiction may be exercised over a defendant. The three requirements of this specific jurisdiction test are: (1) the nonresident defendant must do some act or consummate some transaction with the forum or perform some act by which he purposefully avails himself of the privilege of conducting activities in the forum, thereby invoking the benefits and protections of its laws; (2) the claim must be one which arises out of or results from the defendant's forum-related activities; and (3) exercise of jurisdiction must be reasonable. *Haisten*, 784 F.2d at 1397.

#### 1. Purposeful Availment

■ The purposeful availment requirement ensures that a nonresident defendant will not be haled into court based upon random, fortuitous or attenuated contacts with the forum state, or upon the unilateral activity of another party or a third person. *Id.* However, it is not required that a defendant be physically present in the forum state or have physical contacts with the forum so long as her efforts are "purposefully directed" toward forum residents. *Panavision Int'l, L.P. v. Toeppen*, 141 F.3d 1316, 1320 (9th Cir.1998). Specifically, in tort cases, jurisdiction may attach if the defendant's conduct is aimed at or has an effect in the forum state. *Id.* at 1321 (citing *Calder v. Jones*, 465 U.S. 783, 104 S.Ct. 1482, 79 L.Ed.2d 804 (1984)).

Under the so-called "effects doctrine," personal jurisdiction in torts cases can be based upon: "(1) intentional actions; (2) expressly aimed at the forum state; (3) causing harm, the brunt of which is suffered—and which the defendant knows is likely to be suffered—in the forum state." *Id.* (quoting *Core–Vent Corp. v. Nobel Industries AB*, 11 F.3d 1482, 1486 (9th Cir.1993)); cf. *Data Disc*, 557 F.2d at 1287 (finding that it may be unreasonable to subject an out-of-state defendant to jurisdiction where the allegedly tortious act is committed outside of the forum state, having only an effect within the state, if the act is negligent rather than purposeful).

In *Panavision*, the Ninth Circuit held that a defendant who registered a corporation's trademark as a domain name in Illinois and posted a web site on the Internet using that domain name as part of a scheme to extort money from the corporation whose principal place of business was California had purposefully availed himself of the privilege of conducting activities in California. 141 F.3d at 1322. Applying the "effects" test, the Ninth Circuit found the defendant's conduct was intentional and was directed toward California because his conduct had the effect, as he knew it likely would, of injuring the corporation in the forum where the corporation had its principal place of business and where the relevant industry (movie and television) is centered. *Id.* In *Lake v. Lake*, 817 F.2d 1416 (9th Cir.1987), the Ninth Circuit held that an attorney who wrongfully obtained an ex parte order in California awarding temporary custody of a child to his natural mother had "purposeful contacts" with Idaho because he knew that the natural mother would use the order in Idaho to seek custody of her child who resided there with his stepmother and natural father. *Id.* at 1423. Thus, Idaho could properly exercise jurisdiction over the defendant whose only contact with the forum state was the purposeful direction of a foreign act having effect in the forum state. *Id.*

(citing *Calder*, 465 U.S. at 789, 104 S.Ct. 1482).

■ Defendant's conduct appears to satisfy the "effects test." Plaintiff alleges that defendant acted intentionally in exercising undue influence over the decedent in order to wrongfully obtain certain trust property from the decedent's trust which was intended to be distributed to plaintiff. As in *Panavision*, defendant's intentional conduct can be characterized as a scheme directed toward a Nevada resident[1] for the purpose of harming that person in Nevada, even though all of defendant's alleged wrongful acts actually occurred in California and defendant had no other contact with Nevada. Defendant knew that the decedent had executed a trust instrument in Nevada which was to distribute a portion of the trust assets to the decedent's wife, plaintiff, who resided in Nevada. Defendant must have known that it was likely that plaintiff would feel the effects of defendant's wrongful conduct, not in California where the acts occurred, but in Boulder City, Nevada where plaintiff intended to return and did return after her husband's death.

Defendant relies solely on a district court case from Missouri to argue that a "plaintiff may not invoke tortious [act] long-arm jurisdiction consistent with due process where the non-resident defendant had no contact with [the forum] besides extraterritorial acts having consequences in the [forum]." See *May Dept. Stores Co. v. Wilansky*, 900 F.Supp. 1154 (E.D.Mo.1995). However, this is clearly not the law in the Ninth Circuit. In both *Panavision* and *Lake*, the Ninth Circuit found the purposeful availment requirement to be satisfied where the defendant's *only* contact with the forum state was the purposeful direction of a *foreign* act having the effect in the forum state. See *Panavision*, 141 F.3d at 1321–22; *Lake*, 817 F.2d at 1423 (relying on the Supreme Court's decision in *Calder v. Jones*).

1. Although plaintiff rented an apartment with the decedent in California in March 1997 and apparently stayed there until her husband's death on September 1, 1997, it was clearly a temporary measure to allow the decedent to be near his doctors. Moreover, plaintiff returned immediately to Boulder City, Nevada after his death and has continued to reside there since that time. Thus, plaintiff resided in Nevada at the time that she filed this lawsuit.

## 2. Defendant's Forum–Related Activities

■ The second requirement for specific jurisdiction is that the claim asserted in the litigation arises out of the defendant's forum-related activities. This requirement is satisfied here because plaintiff would not have been injured "but for" defendant's alleged undue influence over the decedent and this conduct was intended to harm plaintiff, a resident of Nevada, in Nevada. See *Panavision*, 141 F.3d at 1322.

## 3. Reasonableness

■ The third requirement for satisfaction of due process is that the exercise of personal jurisdiction be reasonable. However, because this court has found that defendant purposefully established minimum contacts with Nevada, she "must present a compelling case that jurisdiction would be unreasonable." *Panavision*, 141 F.3d at 1322. Defendant has failed to make such a showing here.

■ In considering the question of reasonableness, this court is guided by seven factors identified by the Ninth Circuit: (1) the extent of a defendant's purposeful interjection; (2) the burden on the defendant in defending in the forum; (3) the extent of conflict with the sovereignty of the defendant's state; (4) the forum state's interest in adjudicating the dispute; (5) the most efficient judicial resolution of the controversy; (6) the importance of the forum to the plaintiff's interest in convenient and effective relief; and (7) the existence of an alternative forum. *Panavision*, 141 F.3d at 1323.

### a. Purposeful Interjection

Although this factor is considered above in determining whether a defendant purposefully availed herself of the privileges of the forum state, it also must be weighed in assessing overall reasonableness. Here, defendant's conduct was directed at a Nevada resident and resulted in harm to that resident in Nevada. Even though her conduct occurred only in California, defendant must have known that this conduct would likely injure plaintiff in Nevada. Thus, this factor weighs in favor of plaintiff.

### b. Burden on Defendant

Defendant has produced no evidence or even argued that it would create a substantial burden on her to litigate this action in Nevada. Thus, the court will consider this factor to be neutral.

### c. Extent of Conflict with Sovereignty of Defendant's State

No argument has been raised by either side that California and Nevada apply different standards to the claims of undue influence, legal incapacity or breach of contract. Even if a conflict does exist between Nevada's laws and the "fundamental substantive social policies" of California, such a dispute can be resolved through choice of law rules, not jurisdiction. *Haisten*, 784 F.2d at 1401–02. Thus, this factor is neutral.

### d. Nevada's Interest

Nevada has a strong interest in providing a forum for its residents to redress injuries which occur within the state. *Rigdon*, 649 F.Supp. at 269. Because plaintiff is a Nevada resident who suffered injury in Nevada, this factor weighs in plaintiff's favor.

### e. Efficient Judicial Resolution

This factor focuses on the location of the evidence and the witnesses, but is no longer heavily weighed given modern advances in communication and transportation. See *Panavision*, 141 F.3d at 1323. Yet, because most of the relevant events took place in California, this factor weighs slightly in favor of defendant.

### f. Plaintiff's Interest in Convenience and Effective Relief

Plaintiff has suggested that she would have difficulty prosecuting this case in California due to financial strains caused by defendant's conduct. However, she has not produced any proof of this hardship. Thus, the court will consider this factor to be neutral.

g. Alternative Forum

Because California is an alternative forum, this factor weighs in defendant's favor.

■■■ Balancing these factors (only two of which weigh in defendant's favor), it is clear that defendant has failed to present a compelling case that the exercise of this court's jurisdiction over her would be unreasonable.

## B. Motion to Dismiss or Transfer Venue Under Fed.R.Civ.P. 12(b)(3) or 28 U.S.C. § 1406

■■■ Defendant moves to dismiss or transfer venue to the Northern District of California pursuant to 28 U.S.C. § 1406(a) because this district does not satisfy the requirements of the general venue statute, 28 U.S.C. § 1391. However, both sides overlook the fact that the general venue statute does not apply to this case.

In *Polizzi v. Cowles Magazines, Inc.*, 345 U.S. 663, 665–66, 73 S.Ct. 900, 97 L.Ed. 1331 (1953), the Supreme Court held that the venue of removed actions is governed by 28 U.S.C. § 1441(a); section 1391 has no application to a removed action. *Polizzi* found that section 1441(a) expressly provides that the proper venue of a removed action is "the district court of the United States for the district and division embracing the place where such action is pending." See *id.* Under section 1441(a), venue is proper in the District of Nevada because it is the district embracing Clark County, the place where this action was originally pending. See *id.* Because venue is proper under section 1441(a), defendant may not challenge venue under section 1391 even though venue may not have been proper if the case had been brought initially in this district. See *id.*

■■■ Defendant may nonetheless request a discretionary transfer to a more convenient district court forum under 28 U.S.C. § 1404. *PT United Can Co. Ltd. v. Crown Cork & Seal Co., Inc.*, 138 F.3d 65, 72 (2nd Cir.1998). Section 1404(a) states: "For the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought." Defendant has not moved for transfer of venue pursuant to section 1404 and thus has not addressed the factors upon which a discretionary transfer of venue is based, including convenience of the parties, convenience of the witnesses, and the interest of justice, although defendant alluded briefly to them at oral argument in support of her §§ 1391(a)/1406(a) venue motion. Even though the court can transfer venue *sua sponte* under section 1404, see *Muldoon v. Tropitone Furniture Co.*, 1 F.3d 964, 966 (9th Cir.1993), the court declines to do so because the issues have not been fully briefed by the parties.

## III. *Conclusion*

Accordingly, **IT IS ORDERED** that defendant's motion (# 6) to dismiss or, in the alternative, to transfer venue be *DENIED*, without prejudice to the filing in the future of a motion under 28 U.S.C. § 1404(a).