**Kate CUMMINGS, a single person, Plaintiff,**

**v.**

**WESTERN TRIAL LAWYERS ASSOCIATION; Doug Bragg, in his official and individual capacity; Susan Guinn, in her official and individual capacity, Defendants.**

**No. CIV 00–0086–PHX–ROS.**

United States District Court,
D. Arizona.

March 12, 2001.

4. Attached as Exhibit E to Plaintiff's Motion for Summary Judgment, Clerk's Docket No. 16.

Cheri McCracken, Phoenix, AZ, for Kate Cummings.

D. Dale Haralson, Haralson Miller Pitt & McAnally PC, Tucson, AZ, Mark Clayton Choate, Carol P. LaPlant, Choate & Guinn, San Diego, CA, Dan Stormer, Hadsell & Stormer Inc., Pasadena, CA, for Western Trial Lawyers Ass'n., Doug Bragg, Susan Guinn.

Doug Bragg, Denver, CO, pro se.

## ORDER

SILVER, District Judge.

Defendants Western Trial Lawyers Association ("WTLA"), Doug Bragg ("Bragg"), and Susan Guinn ("Guinn") each filed a Motion to Dismiss Plaintiff's Complaint, setting forth the following three arguments: (1) that the Court lacks subject matter jurisdiction; (2) that the venue is improper; and (3) that Plaintiff failed to sufficiently serve process on them.[1] In addition, Defendants Guinn and Bragg allege lack of personal jurisdiction. Defendants' Motions to Dismiss are currently pending before the Court. Having analyzed the written and oral arguments set forth by all the parties to this lawsuit, the Court will partially grant and partially deny Guinn's Motion to Dismiss and will deny the WTLA and Bragg's Motions to Dismiss.

### Background

From 1991 until March 31, 1999, Plaintiff was the full-time Executive Director of the WTLA. (Cummings Aff. ¶ 1.) The WTLA paid Plaintiff through May 31, 1999. (Compl.¶ 6.) During this period, Plaintiff maintained an office in Phoenix, Arizona, and all mail directed to the WTLA through her was routed to a post

---

1. At the hearing on Defendants' Motions to Dismiss on November 3, 2000, Defendants conceded that Plaintiff cured the alleged defective service of process. Thus, the Court will deny Defendants' Motions to Dismiss on this ground.

office in Phoenix. (Cummings Aff. ¶ 2–3.) As Executive Director of the WTLA, Plaintiff was responsible for a variety of duties, including organizing WTLA legal seminars, memberships, and marketing for the association. (Compl.¶ 7.) Due to the poor attendance at WTLA seminars, the WTLA's financial status grew worse from 1997 through 1999. (*Id.* ¶¶ 11, 12, 26, 27.)

Bragg became President of the WTLA in July 1998. (*Id.* ¶ 15.) Plaintiff alleges that from the beginning she and Bragg were at odds over the operations of the WTLA. (*Id.* ¶¶ 15–33.) Plaintiff alleges that Bragg repeatedly verbally attacked her in front of several WTLA members and other attorneys. For example, Plaintiff alleges that prior to an August 1998 seminar in Denver, Bragg took control of the WTLA treasury by removing all WTLA funds from its Arizona bank account and depositing the funds in Bragg's law firm's trust account in Colorado. (*Id.* ¶ 21.)

In January 1999, with the assistance of several board members, Plaintiff arranged a meeting to discuss WTLA's financial situation. (*Id.* ¶ 28.) This prompted Bragg to fax a letter to fifty-two members of the WTLA board, blaming the WTLA's financial problems on Plaintiff and raising serious allegations about Plaintiff's conduct. (*Id.* ¶ 32.) In the same letter, Bragg canceled Plaintiff's meeting, and resigned as President of WTLA. (*Id.*)

On or about February 26, 1999, Guinn informed Plaintiff by letter that the WTLA could no longer afford a full-time Executive Director, but offered Plaintiff a part-time position beginning on June 1, 1999. (*Id.* ¶ 36.) On or about March 5, 1999, Plaintiff received a second letter from Guinn withdrawing the offer of part-time employment. (*Id.* ¶ 37.)

On January 18, 2000, Plaintiff filed her Complaint setting forth the following allegations arising from her employment with the WTLA.: (1) defamation against Bragg; (2) breach of contract against the WTLA; (3) breach of duty of good faith and fair dealing against the WTLA; (4) intentional infliction of emotional distress against Bragg, Guinn, and the WTLA; (5) intentional interference with a business relationship against Bragg and Guinn; (6) false light against Bragg and Guinn; and (7) quantum meruit against the WTLA.

On June 1, 2000, Guinn filed a Motion to Dismiss. [Doc. # 8.] On June 6, 2000, the WTLA filed a Motion to Dismiss. [Doc. # 14.] On August 1, 2000, Bragg filed a motion to Dismiss. [Doc. # 21.] These three motions are currently pending before the Court.

### *Discussion*

### I. Lack of Subject Matter Jurisdiction

In her Complaint, Plaintiff alleges diversity jurisdiction pursuant to 28 U.S.C. § 1332 and supplemental jurisdiction pursuant to 28 U.S.C. § 1367. Plaintiff asserts that she was a resident of Arizona and that the WTLA maintained a principal place of business in Arizona. (Compl.¶¶ 1–2.) Thus, Plaintiff's Complaint fails to allege complete diversity between the parties. *See* 28 U.S.C. § 1332; *Caterpillar, Inc. v. Lewis*, 519 U.S. 61, 68, 117 S.Ct. 467, 136 L.Ed.2d 437 (1996). Because Plaintiff's Complaint relies on diversity jurisdiction, Defendants argue that the Court should dismiss Plaintiff's action for lack of subject matter jurisdiction.

In response to the Motions to Dismiss, Plaintiff established that the WTLA is a nonprofit corporation incorporated under the laws of the state of Nevada and that the WTLA did not maintain its principal place of business in Arizona. (Earl Aff. ¶ 2; Pl. Resp. to Mot. to Dismiss at 3.) At the hearing on the motions, Defendants conceded that Arizona was not the WTLA's principal place of business at the time Plaintiff commenced this lawsuit. *See Lew v. Moss*, 797 F.2d 747, 750 (9th Cir.1986).

■ "Defective allegations of jurisdiction may be amended, upon terms, in the trial or appellate courts." 28 U.S.C. § 1653. The burden of establishing diver-

sity jurisdiction lies with the party invoking the jurisdiction in a federal court. *Littlefield v. Continental Cas. Co.*, 475 F.Supp. 887, 889 (C.D.Cal.1979). "In order to avoid dismissal for lack of subject matter jurisdiction, the plaintiff must enlarge the record to show the citizenship of each party as of the date that the complaint was filed." *Blue Ridge Ins. Co. v. Stanewich*, 142 F.3d 1145, 1148 (9th Cir. 1998) (quoting *Dausch v. Rykse*, 9 F.3d 1244, 1245 (7th Cir.1993)). Because Defendants no longer dispute that complete diversity existed at the time Plaintiff commenced this lawsuit, the Court, pursuant to Fed.R.Civ.P. 15(a), will allow Plaintiff to file an Amended Complaint based upon a stipulation from Defendants establishing that the WTLA's state of incorporation and its principal place of business are in states other than Arizona. The Court will allow the Plaintiff fifteen days from the date of this Order to Amend the Complaint. If Plaintiff fails to comply with the Court's Order, the Court may dismiss this action. *See Ferdik v. Bonzelet*, 963 F.2d 1258, 1260 (9th Cir.1992), *cert. denied*, 506 U.S. 915, 113 S.Ct. 321, 121 L.Ed.2d 242 (1992).

## II. Improper Venue

Title 28 U.S.C. § 1391(a), the statute which governs venue in diversity cases, provides:

> A civil action wherein jurisdiction is founded only on diversity of citizenship may, except as otherwise provided by law, be brought only in (1) a judicial district where any defendant resides, if all defendants reside in the same State, *(2) a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred,* or a substantial part of property that is the

subject of the action is situated, or (3) a judicial district in which any defendant is subject to personal jurisdiction at the time the action is commenced, if there is no district in which the action may otherwise be brought.

28 U.S.C. § 1391(a) (emphasis added). "The overriding purpose of § 1391(a) is to further the convenience of the parties." *Decker Coal Co. v. Commonwealth Edison Co.*, 805 F.2d 834 (9th Cir.1986) (citing *Gardner Engineering Corp. v. Page Engineering Co.*, 484 F.2d 27, 33 (8th Cir. 1973)). "When the cause of action is personal to the individual defendant, the venue requirement must be met as to that defendant." *Hoover Group, Inc. v. Custom Metalcraft, Inc.*, 84 F.3d 1408, 1410 (Fed.Cir.1996). Based on the factual circumstances of the present action, Plaintiff must establish venue under § 1391(a)(2) and illustrate that a substantial part of the events or omissions giving rise to her claims against each Defendant occurred in Arizona.[2]

At the hearing on the Motions to Dismiss, Defendants argued that venue would be proper in California or Colorado due to convenience of the Defendants. The Court distinguished between Defendants' Motion to Dismiss for Improper Venue, which is currently pending before the Court, and a Motion to Transfer Venue under 28 U.S.C. § 1404, which Defendants failed to raise. The Court held that it would not rule on a Motion to Transfer because the issue was not fully briefed.

### A. Defendant WTLA

Plaintiff has alleged the following claims against the WTLA: (1) breach of contract; (2) breach of good faith and fair dealing;

---

**2.** For purposes of the venue determination under § 1391(a)(1), the WTLA is incorporated in the State of Nevada with a current principal place of business in California. (Earl. Aff. ¶ 2.) *See also Decker Coal*, 805 F.2d at 842 (holding that because Decker's employees, properties, equipment, supplies, and managers were located in Montana, Montana was Decker's principal place of business under

§ 1391(a)(1)). Defendant Bragg is a resident of the State of Colorado. (Bragg Aff. ¶ 2.) Defendant Guinn is a resident of the State of California. (Guinn Mem. at 1.) Because all Defendants do not reside in the same State, Plaintiff cannot rely on § 1391(a)(1) to support her argument that venue is proper in Arizona.

(3) intentional infliction of emotional distress;[3] and (4) quantum meruit.

The WTLA argues that venue is improper because it is a Nevada corporation which does not have any personal contact with Arizona. (WTLA Mem. at 4.) The WTLA further asserts that venue is only proper in the Southern District of California, the District of Colorado, or the District of Nevada and that its records and a majority of its officers reside in California. (*Id.* at 4–5.)

■ The undisputed facts, however, establish that Plaintiff entered into a contractual agreement with the WTLA to perform a majority of her tasks in Arizona. Plaintiff asserts that "[d]uring the entire time, WTLA was headquartered in Phoenix, Arizona and all information printed, published, or marketed regarding WTLA reflected this[.]" (Cummings Aff. ¶ 2.) Thus, because a substantial portion of the events giving rise to Plaintiff's breach of contract, breach of good faith and fair dealing, intentional infliction of emotional distress, and quantum meruit claims against the WTLA occurred in Arizona, venue in Arizona is proper regarding the WTLA. *See Decker Coal,* 805 F.2d at 842 ("We believe that the spirit of § 1391(a) is better served in this case if venue for a claim based on breach of contract be the place of intended performance rather than the place of repudiation. . . . We favor this rule because the place of performance is determined at the inception of the contract and therefore parties can anticipate where they may be sued.") (citing *Am. Carpet Mills v. Gunny Corp.,* 649 F.2d 1056, 1059 (5th Cir.1981)); *Graf v. Tastemaker,* 907 F.Supp. 1473, 1474 (D.Colo.1995) (finding that venue in Colorado was proper because Plaintiff moved to Colorado, performed all of the services of the contract in that state, and the actions of the defendant which constituted the breach of contract claim occurred through transmissions to the plaintiff in Colorado); *Figgie,* 925 F.Supp. at 412–13 (holding that venue was proper

in a state where correspondence and invoices were either sent from or received, and where the negotiations for the contract occurred).

### B. Defendants Guinn & Bragg

Plaintiff has alleged the following causes of action against Defendants Guinn and Bragg: (1) intentional infliction of emotional distress; (2) intentional interference with a business relationship; and (3) false light.

■ Defendant Guinn argues that no claim in the Complaint is a proper basis for asserting venue in Arizona against her. (Guinn Mem. at 6.) Defendant Bragg argues that venue in Arizona is improper because "all of the alleged actions complained of occurred in Colorado." (Bragg Mem. at 4.) Both of these arguments are without merit. Clearly, a substantial part of the events or omissions giving rise to Plaintiff's tort claims against Guinn and Bragg occurred in Arizona. Plaintiff's alleged injury to all three tort claims undoubtedly occurred in Arizona. *See Bates v. C & S Adjusters, Inc.,* 980 F.2d 865, 866 (2d Cir.1992) (stating that the place where the alleged injuries occurred is a relevant factor in establishing venue under the "substantial part" test); *Merchants Nat'l Bank v. Safrabank,* 776 F.Supp. 538, 541 (D.Kan.1991) ("This . . . test does not require the court to determine where the activities of the defendants were most substantial. Rather, the court need only determine if 'substantial' activities took place in [the forum state].").

■ Further, Plaintiff brings a defamation claim solely against Bragg, alleging that Bragg made false and unprivileged statements about her, knowing they were false. (Compl. at 13.) Again, a substantial part of the events giving rise to Plaintiff's defamation claim against Bragg clearly occurred within Arizona. Bragg directed approximately four letters into Arizona which at least partially caused Plaintiff's defamation injury. (Bragg Re-

---

**3.** Plaintiff brings the intentional infliction of emotional distress claim against Defendants

Guinn and Bragg, acting as agents of the WTLA. (*See* Compl. ¶¶ 57–60.)

ply at 2.) *See Wachtel v. Storm,* 796 F.Supp. 114, 116 (S.D.N.Y.1992) ("Defendant acknowledges that he mailed the letter to [the plaintiff's] offices in this District and that the letter was published here.... Because these events are crucial to plaintiff's cause of action for defamation ... venue in the Southern District of New York is proper under [28 U.S.C. § 1391(a)(2) ].") (citations omitted).

Thus, the Court will not dismiss Plaintiff's action against Guinn or Bragg for improper venue.

### III. Lack of Personal Jurisdiction

#### A. Legal Standard

"Absent traditional bases for personal jurisdiction (physical presence, domicile or consent) the Due Process Clause requires that nonresident defendants have certain minimum contacts with the forum state such that the exercise of personal jurisdiction does not offend traditional notions of fair play and substantial justice." *Brink v. First Credit Resources,* 57 F.Supp.2d 848, 858 (D.Ariz.1999) (citing *Int'l Shoe Co. v. Washington,* 326 U.S. 310, 316, 66 S.Ct. 154, 90 L.Ed. 95 (1945); *Doe v. Am. Nat'l Red Cross,* 112 F.3d 1048, 1050 (9th Cir. 1997); *Data Disc, Inc. v. Systems Tech. Assocs.,* 557 F.2d 1280, 1287 (9th Cir. 1977)). "By requiring that individuals have 'fair warning that a particular activity may subject [them] to the jurisdiction of a foreign sovereign,' the Due Process Clause 'gives a degree of predictability to the legal system that allows potential defendants to structure their primary conduct with some minimum assurance as to where that conduct will and will not render them liable to suit.'" *Id.* (citing *Omeluk v. Langsten Slip & Batbyggeri A/S,* 52 F.3d 267, 270 (9th Cir.1995); *Burger King Corp. v. Rudzewicz,* 471 U.S. 462, 472, 105 S.Ct. 2174, 85 L.Ed.2d 528 (1985)).

"The party seeking to invoke the court's jurisdiction bears the burden of establishing that jurisdiction exists." *Scott v.* *Breeland,* 792 F.2d 925, 927 (9th Cir.1986) (citing *Data Disc, Inc. v. Systems Tech. Assocs.,* 557 F.2d 1280, 1285 (9th Cir. 1977); *Cubbage v. Merchent,* 744 F.2d 665, 667 (9th Cir.1984), *cert. denied,* 470 U.S. 1005, 105 S.Ct. 1359, 84 L.Ed.2d 380 (1985)). "When a defendant moves to dismiss for lack of personal jurisdiction, the plaintiff is 'obligated to come forward with facts, by affidavit or otherwise, supporting personal jurisdiction.'" *Id.* (quoting *Amba Marketing Sys., Inc. v. Jobar Int'l, Inc.,* 551 F.2d 784, 787 (9th Cir.1977)).

In order to establish personal jurisdiction in a diversity case, Plaintiff must show: (1) that the statute of the forum confers personal jurisdiction over the nonresident defendants; and (2) that the exercise of jurisdiction accords with federal principles of due process. *Lake v. Lake,* 817 F.2d 1416, 1420 (9th Cir.1987). Under Arizona's long-arm statute, the approach is a one step analysis: "A court of this state may exercise personal jurisdiction over parties, whether found within or outside the state, to the maximum extent permitted by the Constitution of this state and the Constitution of the United States." Ariz. R. Civ. P. 4.2(a). Accordingly, the jurisdictional question in this action is whether the Court's exercise of personal jurisdiction accords with traditional notions of fair play and substantial justice embodied in the Due Process clause of the Fourteenth Amendment. *Macpherson v. Taglione,* 158 Ariz. 309, 762 P.2d 596, 599 (Ariz.App.1988) (citing *Int'l Shoe,* 326 U.S. at 316, 66 S.Ct. 154).

#### 1. Minimum Contacts

In determining whether Defendants have minimum contacts with Arizona, the Court must focus on "the relationship among the defendant, the forum, and the litigation." *Brink,* 57 F.Supp.2d at 860; *Shaffer v. Heitner,* 433 U.S. 186, 204, 97 S.Ct. 2569, 53 L.Ed.2d 683 (1977). Where no basis for general jurisdiction is alleged,[4]

---

4. Plaintiff does not allege in her Complaint that the Court has personal jurisdiction over Defendants under general jurisdiction, nor does she assert this position in response to the Motions to Dismiss. Moreover, the Court

the Court determines whether specific, limited jurisdiction is warranted. *Terracom v. Valley Nat'l Bank*, 49 F.3d 555, 560 (9th Cir.1995). The Ninth Circuit applies the following three-part test to determine whether specific jurisdiction is proper:

> (1) The nonresident defendant must purposely direct his activities or consummate some transaction with the forum or resident thereof; or perform some act by which he *purposefully avails* himself of the privilege of conducting activities in the forum, thereby invoking the benefits and protections of its laws; (2) the claim must be one which *arises out of* or relates to the defendant's forum-related activities; and (3) the exercise of jurisdiction must comport with fair play and substantial justice, i.e. it must be *reasonable.*

*Brink*, 57 F.Supp.2d at 860 (emphasis added) (citing *Core–Vent Corp. v. Nobel Indus. AB*, 11 F.3d 1482, 1485 (9th Cir.1993); *Lake v. Lake*, 817 F.2d 1416, 1421 (9th Cir.1987); *Burger King*, 471 U.S. at 472–76, 105 S.Ct. 2174.).

### a.. Purposeful Availment

■ In analyzing the purposeful availment requirement of the specific jurisdiction test, the Ninth Circuit performs a qualitative evaluation of the defendant's contact with the forum state to determine whether the defendant's conduct and connection with the forum State are such that he should reasonably anticipate being haled into court there. *Brink*, 57 F.Supp.2d at 860 (citing *Core–Vent*, 11 F.3d at 1484; *World–Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 297, 100 S.Ct. 559, 62 L.Ed.2d 490 (1980)). This requirement may also be met when a defendant has purposefully directed his or her activities or consummated some transaction with the

forum or residents thereof. *Id.* (citing *Brainerd v. Governors of the Univ. of Alberta*, 873 F.2d 1257, 1259 (9th Cir.1989); *Lake*, 817 F.2d at 1421).

Defendant Bragg argues that the Court should use the Ninth Circuit's precedent in *Peterson v. Kennedy*, 771 F.2d 1244, 1262 (9th Cir.1985), *cert. denied,* 475 U.S. 1122, 106 S.Ct. 1642, 90 L.Ed.2d 187 (1986), in its purposeful availment analysis. In *Peterson*,[5] the Ninth Circuit found no personal jurisdiction over a party whose only contacts with the forum were telephone calls and a letters directed into the state. *Peterson,* 771 F.2d at 1261. The court stated that the "use of the mails, telephone, or other international communications simply do not qualify as purposeful activity invoking the benefits and protection of the [forum] state." *Peterson*, 771 F.2d at 1262 (quoting *Thos. P. Gonzalez Corp. v. Consejo Nacional de Produccion de Costa Rica*, 614 F.2d 1247, 1254 (9th Cir.1980)). *Peterson* remains the law in the Ninth Circuit. *See, e.g., Roth v. Garcia Marquez*, 942 F.2d 617, 622 (9th Cir. 1991) (applying the *Peterson* test to a case involving a film maker's breach of contract action against an author and author's agent); *Douglas Furniture Co. of Cal., Inc. v. Wood Dimensions, Inc.*, 963 F.Supp. 899, 901 (C.D.Cal.1997) (applying the *Peterson* test and declining jurisdiction on the basis of two cease and desist letters in a patent action involving a declaratory judgment).

■ Although *Peterson* remains good law, many Ninth Circuit personal jurisdiction cases involving certain types of tort claims similar to Plaintiff's claims against Guinn and Bragg apply the more liberal "effects test." *Panavision Int'l, L.P. v.*

---

finds Defendants' contacts with Arizona are not so substantial and continuous that Arizona has a sufficient relationship with them to assert general jurisdiction. *Lake*, 817 F.2d at 1420; *see also Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 104 S.Ct. 1868, 80 L.Ed.2d 404 (1984). Thus, the Court finds no basis upon which it can exercise general jurisdiction over Defendants.

5. In *Peterson*, which involved a state legal malpractice claim, the defendant's sole contacts with the forum state consisted of a series of telephone calls that he made to the plaintiff from a Washington D.C. office and letters that he sent to a California physician regarding the plaintiff's injury.

*Toeppen,* 141 F.3d 1316, 1321 (9th Cir. 1998). The Ninth Circuit has held that a district court should "apply different purposeful availment tests to contract and tort cases." *Ziegler,* 64 F.3d at 473 (citing *Core–Vent Corp. v. Nobel Indus. AB,* 11 F.3d 1482, 1486 (9th Cir.1993); *Garcia Marquez,* 942 F.2d at 621). "Consistent with the Supreme Court's holding in *Burger King,* merely contracting with a resident of the forum state is insufficient to confer specific jurisdiction over a nonresident." *Id.* In tort cases, however, the Ninth Circuit found that courts should apply the effects test and that "jurisdiction may attach if an out-of-forum defendant merely engages in conduct aimed at, and having effect in, the situs state." *Id.; Panavision,* 141 F.3d at 1321 (stating that in tort cases, purposeful availment may be established if "the defendant's conduct is aimed at or has an effect in the forum state.").

Because Plaintiff has alleged only tort causes of action against Guinn and Bragg which involve conduct aimed at Arizona, it is appropriate for this Court to conduct its purposeful availment analysis under the effects test. *See Calder,* 465 U.S. at 788–90, 104 S.Ct. 1482 (creating the effects test for claims of libel, invasion of privacy, and intentional infliction of emotional harm); *Caruth v. Int'l Psychoanalytical Ass'n,* 59 F.3d 126, 128 n. 1 (9th Cir.1995) (stating that the court will analyze the purposeful availment prong under the effects test because the facts alleged in the complaint could give rise to claims of defamation, intentional interference with business relations, and intentional infliction of emotional distress); *Core–Vent,* 11 F.3d at 1486 (applying the effects test in a libel action against a corporation); *Brainerd,* 873 F.2d at 1259 (applying the effects test in an action for intentional torts); *Panavision,* 141 F.3d at 1321 (stating that because a trademark infringement and unfair competition case was "akin" to a tort case, the court should apply the effects test); *Bancroft & Masters, Inc. v. Augusta Nat'l Inc.,* 223 F.3d 1082, 1087 (9th Cir.2000) (applying the effects test in a trademark

infringement declaratory judgment action); *Gutierrez v. Givens,* 1 F.Supp.2d 1077, 1083 (S.D.Cal.1998) (finding that the effects test applies because the defendants allegedly committed "deliberate and intentional acts in furtherance of an illegal conspiracy to defraud[.]"); *Kumarelas v. Kumarelas,* 16 F.Supp.2d 1249, 1254 (D.Nev. 1998) (applying the effects test in an undue influence case).

"To meet the effects test, the defendant must have (1) committed an intentional act, which was (2) expressly aimed at the forum state, and (3) caused harm, the brunt of which is suffered and which the defendant knows is likely to be suffered in the forum state." *Bancroft & Masters,* 223 F.3d at 1087; *Panavision,* 141 F.3d at 1321; *Core–Vent,* 11 F.3d at 1486 ("*Calder* thus established that personal jurisdiction can be predicated on (1) intentional actions (2) expressly aimed at the forum state (3) causing harm, the brunt of which is suffered—and which the defendant knows is likely to be suffered—in the forum state."). The "express aiming" factor is satisfied "when the defendant is alleged to have engaged in wrongful conduct targeted at a plaintiff whom the defendant knows to be a resident of the forum state." *Id.*

#### b. Arising Out of Forum–Related Activities

The Ninth Circuit has adopted a "but for" test for determining whether a plaintiff's claim arises out of a defendant's forum related activities. *Brink,* 57 F.Supp.2d at 861 (citing *Doe,* 112 F.3d at 1051; *Omeluk,* 52 F.3d at 271). The "arising out of" requirement of the specific jurisdiction test is met if, "but for" the contacts between the defendant and the forum state, Plaintiff's cause of action would not have arisen. *Id.* (citing *Terracom,* 49 F.3d at 561).

#### c. Reasonableness of Exercising Jurisdiction

An unreasonable exercise of jurisdiction violates the Due Process Clause

even if the "purposeful availment" and "arising out of" requirements of the specific jurisdiction test are satisfied. *Id.* (citing *Ziegler,* 64 F.3d at 474–75; *Int'l Shoe,* 326 U.S. at 316, 66 S.Ct. 154). A court presumes that its exercise of jurisdiction over a defendant is reasonable if the first two requirements of the specific jurisdiction test are met. *Id.* (citing *Ballard v. Savage,* 65 F.3d 1495, 1500 (9th Cir.1995); *Sher v. Johnson,* 911 F.2d 1357, 1364 (9th Cir.1990)). If the two requirements are satisfied, then the defendant has the burden of proof and must present a compelling case that the presence of some other considerations would render jurisdiction unreasonable. *Id.* (citing *Ballard,* 65 F.3d at 1500).

▮ The Ninth Circuit considers the following factors to determine whether the exercise of specific jurisdiction is reasonable: (1) the extent of the defendant's purposeful interjection into the forum state's affairs; (2) the burden on the defendant of defending in the forum; (3) the extent of conflict with the sovereignty of the defendant's state; (4) the forum state's interest in adjudicating the dispute; (5) the most efficient judicial resolution of the controversy; (6) the importance of the forum to the plaintiff's interest in convenient and effective relief; and (7) the existence of an alternative forum. *Id.* (citing *Ziegler,* 64 F.3d at 475; *Core–Vent,* 11 F.3d at 1487–88). None of these factors are individually dispositive, but the Court must balance all seven. *Core–Vent,* 11 F.3d at 1488.

"The party seeking to invoke the court's jurisdiction bears the burden of establishing that jurisdiction exists." *Scott v. Breeland,* 792 F.2d 925, 927 (9th Cir.1986) (citing *Data Disc, Inc. v. Systems Tech. Assocs.,* 557 F.2d 1280, 1285 (9th Cir.

1977); *Cubbage v. Merchent,* 744 F.2d 665, 667 (9th Cir.1984), *cert. denied,* 470 U.S. 1005, 105 S.Ct. 1359, 84 L.Ed.2d 380 (1985)). "When a defendant moves to dismiss for lack of personal jurisdiction, the plaintiff is 'obligated to come forward with facts, by affidavit or otherwise, supporting personal jurisdiction.'" *Id.* (quoting *Amba Marketing Sys., Inc. v. Jobar Int'l, Inc.,* 551 F.2d 784, 787 (9th Cir.1977)). "The mere allegations of a complaint, when contradicted by affidavits, are not enough to confer personal jurisdiction over a non-resident defendant." *Chem Lab Products, Inc. v. Stepanek,* 554 F.2d 371, 372 (9th Cir.1977) (citing *Taylor v. Portland Paramount Corp.,* 383 F.2d 634, 639 (9th Cir.1967)); *Data Disc,* 557 F.2d at 1284 ("If only one side of the conflict was supported by affidavit, our task would be relatively easy, for we may not assume the truth of allegations in a pleading which are contradicted by affidavit.") (citing *Taylor,* 383 F.2d at 639).

## B. Personal Jurisdiction Over Guinn [6]

### 1. Fiduciary Shield Doctrine

Defendant Guinn argues that because she never acted "outside of my official capacity as secretary of WTLA[,]" the Court possesses no personal jurisdiction over her. (Guinn Aff. ¶ 4.) To support this position, Guinn asserts that nowhere in the Complaint did Plaintiff allege that Guinn acted in her individual rather than official capacity. Guinn cites the Ninth Circuit's language in *Forsythe v. Overmyer,* 576 F.2d 779 (9th Cir.), *cert. denied,* 439 U.S. 864, 99 S.Ct. 188, 58 L.Ed.2d 174 (1978), in support of her position that "a corporate officer who has contact with a forum only with regard to the performance of his offi-

---

6. Plaintiff alleges that Guinn contacted Plaintiff's landlord in Arizona and attempted to break Plaintiff's lease. (Compl.¶ 39.) Guinn expressly denies this allegation by stating: "At no time have I had any contact, oral or written, with Plaintiff Kate Cummings' landlord or anyone at her apartment complex, as alleged by Plaintiff in Paragraph 39 of the

Complaint." (Guinn Aff. ¶ 5.) Because Plaintiff has failed to offer any evidence to support the bare assertion that Guinn contacted her landlord, the Court will not consider this allegation in its personal jurisdiction analysis. *See Chem Lab,* 554 F.2d at 372 (citing *Taylor,* 383 F.2d at 639); *Data Disc,* 557 F.2d at 1284 (citing *Taylor,* 383 F.2d at 639).

cial duties is not subject to personal jurisdiction in that forum."[7] *Forsythe*, 576 F.2d at 783–84. Although Guinn did not expressly set forth her argument under the fiduciary shield doctrine, it appears that Guinn has adopted Bragg's argument in this regard.

 Under the fiduciary shield doctrine, "an officer's or employee's mere association with a corporation is an insufficient basis for the Court to assert jurisdiction over them, even though the Court can assert jurisdiction over the corporation." *Brink*, 57 F.Supp.2d at 858–59 (citing 4 Charles A. Wright & Arthur R. Miller, *Fed. Practice and Procedure* § 1069 at 370 (2d ed.1987)).

The Supreme Court's decision in *Calder v. Jones*, 465 U.S. 783, 104 S.Ct. 1482, 79 L.Ed.2d 804 (1984), however, rejected a liberal interpretation of the fiduciary shield doctrine. In *Calder*, the plaintiff, a professional entertainer who lived and worked in California, brought suit in a California court claiming that she had been libeled in an article published in the National Enquirer. The plaintiff named as defendants the National Enquirer, Inc., the paper's distributors, and two defendants who wrote and edited the article. The plaintiff alleged the following torts: (1) libel; (2) invasion of privacy; and (3) intentional infliction of emotional harm. Defendant South was a Florida resident who traveled frequently to California for business. South conducted his research in Florida, but relied on telephone calls to sources in California for information contained in the article. Defendant Calder, who was President and Editor of the National Enquirer, was also a Florida resident. He reviewed and approved the subject matter of the article and edited the article's final form. The trial court dismissed these two defendants on jurisdictional grounds.

On appeal, the California Court of Appeals reversed and found that "a valid basis for jurisdiction existed on the theory that petitioners intended to, and did, cause tortious injury to respondent in California." *Calder*, 465 U.S. at 787, 104 S.Ct. 1482. The Supreme Court granted certiorari, affirmed the California Court of Appeals' decision, and expressly stated that South and Calder's "status as employees does not somehow insulate them from jurisdiction." *Id.* at 790, 104 S.Ct. 1482. The Supreme Court distinguished between an employee "who has no control over and derives no direct benefit from his employer's sales in [a] distant state" and an employee whose alleged tortious actions were affirmatively aimed toward a that state. *Id.* at 789, 104 S.Ct. 1482. The Supreme Court held:

> Petitioners are correct that their contacts with California are not to be judged according to their employer's activities there. On the other hand, their status as employees does not somehow insulate them from jurisdiction. Each defendant's contacts with the forum State must be assessed individually. In this case, petitioners are primary participants in an alleged wrongdoing intentionally directed at a California resident, and jurisdiction over them is proper on that basis.

*Id.* at 790, 104 S.Ct. 1482 (citation omitted).

---

7. In *Forsythe*, the Ninth Circuit analyzed whether Overmyer, a New York resident, who personally guaranteed a lease which provided that it was subject to the jurisdiction of California courts purposefully availed himself to California. The Ninth Circuit found that although much of Overmyer's previous contacts with California were made in his capacity as a corporate officer, "he regularly involved himself personally in his corporations' ventures by giving his personal guaranty for corporate obligations." *Forsythe*, 576 F.2d at 783 n. 6. Regarding the lease in question, the court stated that Overmyer "interjected himself into the transaction by assuming *personal liability* in the event of default on a contract expressly subject to jurisdiction in the California forum." *Id.* at 783 (emphasis added). The court held that California had personal jurisdiction over Overmyer, because "[w]hile Overmyer could have remained behind the multiple veils of his complex business organization, he chose not to do so." *Id.* at 784.

In *Hudson v. Moore Business Forms, Inc.*, 609 F.Supp. 467 (N.D.Cal.1985), *aff'd in part, vacated in part on other grounds*, 836 F.2d 1156 (9th Cir.1987), a California district court adopted the Supreme Court's reasoning in *Calder* on facts similar to the present action. In *Hudson*, the plaintiff brought an action against her former employer for breach of an employment contract, breach of an implied covenant of good faith and fair dealing, and interference with advantageous economic relations. The plaintiff further brought an action against four of her former supervisors for interference with advantageous economic relations. Three of the four supervisors moved to dismiss, alleging that the court lacked personal jurisdiction over them. These defendants relied on the language in *Forsythe*, arguing that because they had no contact with the state of California other than in their corporate capacities, *Forsythe* mandated that they were not subject to personal jurisdiction in that forum. The court, however, found that because the defendants were charged with wrongful acts similar to the torts alleged in the Supreme Court's decision in *Calder*, *Forsythe* did not apply. The court stated:

> *Calder* makes it clear that the sweeping language used by the court in *Forsythe* does not apply when an employee-defendant is alleged to have been a direct participant in wrongful acts directed at a plaintiff in the forum state. Defendants' dismissal motion is therefore denied.

*Hudson*, 609 F.Supp. at 477.

In addition, the Ninth Circuit has found that "because the Arizona long-arm statute extends to the limit of constitutional due process . . . and because it is not equitably limited by the fiduciary shield doctrine, the reach of long-arm jurisdiction in Arizona is effectively stretched by the reasoning of *Calder* [.]" *Davis v. Metro Productions, Inc.*, 885 F.2d 515, 522 (9th Cir.1989) (citation omitted). "Thus, Arizona's long-arm statute may, consistent with constitutional due process, allow assertion of personal

jurisdiction over officers of a corporation as long as the court finds those officers to have sufficient minimum contacts with Arizona." *Id.* (citing *Retail Software Servs., Inc. v. Lashlee*, 854 F.2d 18, 22–3 (2d Cir.1988)). "Accordingly, the jurisdictional question in this action is whether the Court's exercise of jurisdiction accords with 'traditional notions of fair play and substantial justice' embodied in the Due Process clause of the Fourteenth Amendment and not whether the fiduciary shield doctrine bars jurisdiction." *Brink*, 57 F.Supp.2d at 860 (citing *Macpherson*, 762 P.2d at 599).

■ Plaintiff asserts three tortious causes of action against Guinn: (1) intentional infliction of emotional distress; (2) intentional interference with her business relationship; and (3) false light. Even though the only facts alleged against Guinn giving rise to Plaintiff's tort claims involve Guinn acting solely as an officer of the WTLA, Plaintiff expressly alleges that Guinn is a primary participant in a wrongdoing intentionally directed at an Arizona resident. *Calder*, 465 U.S. at 790, 104 S.Ct. 1482. *Forsythe*, which involved a corporate officer's personal guarantee on a lease rather than alleged intentional tortious acts directed at a forum resident, does not preclude this Court from exercising personal jurisdiction over Guinn. *Id.*; *Hudson*, 609 F.Supp. at 477. Because Arizona's long-arm statute may allow an assertion of personal jurisdiction over officers of a corporation so long as those officers have sufficient minimum contacts with Arizona, the Court's determination of its personal jurisdiction over Guinn depends on her minimum contacts with Arizona.[8] *Davis*, 885 F.2d at 522; *Brink*, 57 F.Supp.2d at 860.

### 2. Guinn's Purposeful Availment

The Court must conduct a minimum contacts analysis to decide whether exer-

---

**8.** Because *Forsythe* does not preclude the Court from exercising personal jurisdiction over Defendant Guinn, jurisdiction over

Bragg also is not precluded and depends on a minimum contact analysis.

cising jurisdiction over Guinn accords with traditional notions of fair play and substantial justice. *Macpherson,* 762 P.2d at 599. The Court must determine whether Guinn directed her allegedly tortious actions toward Arizona with regard to each claim set forth by Plaintiff.

### a. Intentional Infliction of Emotional Distress [9]

Plaintiff alleges a claim for intentional infliction of emotional distress against Guinn, because Guinn verbally harassed Plaintiff, "continually threatening to terminate her", and allowed "the allegations [against Plaintiff] to stand and recommend [Plaintiff's] dismissal" while Plaintiff was in Arizona.[10] (Compl. ¶ 55; Cummings Aff. ¶ 11.)

 Under the effects test, Plaintiff's allegation of intentional infliction of emotional distress against Guinn is sufficient to establish purposeful availment. *Panavision,* 141 F.3d at 1321. Plaintiff has sufficiently shown that Guinn intentionally threatened to terminate her and intentionally "made it impossible" for Plaintiff to clear her name with the WTLA. (*See* Cummings Aff. ¶¶ 11,14,15.) Under these allegations, Guinn intentionally directed wrongful actions at Plaintiff, a resident of Arizona, while Plaintiff was in Arizona,

allegedly causing Plaintiff harm in Arizona which included, "depression, insomnia, nausea, a change in eating habits, feelings of betrayal and hopelessness." (Compl. ¶ 56.) *See also Bancroft & Masters,* 223 F.3d at 1087; *Panavision,* 141 F.3d at 1321; *Core–Vent,* 11 F.3d at 1486.

### b. Intentional Interference with Business Relationship [11]

Plaintiff brings this claim against Guinn by alleging that Guinn interfered with Plaintiff's business relationship with the WTLA when Guinn "terminated" her and when Guinn eliminated the part-time position of Executive Director. (Compl. ¶ 59.) In support of this argument, Plaintiff alleges that on February 26, 1999, Guinn sent a letter to Plaintiff stating that the WTLA "could no longer afford a full-time Executive Director and that the position would end May 31, 1999." (*Id.* ¶ 36.) Guinn also allegedly offered Plaintiff a part-time position at a salary of $20,000 plus benefits, which was later withdrawn. (*Id.* ¶¶ 36,37.) Plaintiff states that upon Bragg's resignation as president of the WTLA, Guinn became the WTLA's president and "chief decision maker." (Cummings Aff. ¶ 12.)

The affidavit testimony of Guinn, however, directly contradicts Plaintiff's allegations. Guinn states that she did not "ter-

---

9. Under Arizona law, the elements for intentional infliction of emotional distress are:

> [F]irst the conduct by the defendant must be 'extreme' and 'outrageous'; second, the defendant must either intend to cause emotional distress or recklessly disregard the near certainty that such distress will result from his conduct; and third, severe emotional distress must indeed occur as a result of defendant's conduct.

*Johnson v. McDonald,* 197 Ariz. 155, 3 P.3d 1075, 1080 (Ariz.App.1999) (citing *Ford v. Revlon, Inc.,* 153 Ariz. 38, 734 P.2d 580, 585 (1987)).

10. Guinn has established in her affidavit testimony that she did not "recommend" that the WTLA fire Plaintiff, but that she merely "reviewed and assisted with the content of the two letters." (Guinn Aff. ¶ 4.) Because Plaintiff has failed to offer evidence controverting Guinn's sworn testimony, the Court will con-

duct its personal jurisdiction analysis assuming that Guinn did not "recommend" Plaintiff's termination. *See Chem Lab,* 554 F.2d at 372; *Data Disc,* 557 F.2d at 1284.

11. Under Arizona law, the elements for intentional interference with a business relationship are:

> (1) The existence of valid contractual relationship or business expectancy; (2) knowledge of the relationship or expectancy on the part of the interferor; (3) intentional interference inducing or causing a breach or termination of the relationship or expectancy; and (4) resultant damage to the party whose relationship or expectancy has been disrupted.

*Antwerp Diamond Exchange of America, Inc. v. Better Bus, Bureau of Maricopa County, Inc.,* 130 Ariz. 523, 637 P.2d 733, 739–40 (1981) (citing *Calbom v. Knudtzon,* 65 Wash.2d 157, 396 P.2d 148 (1964)).

minate" Plaintiff or eliminate Plaintiff's position, but that she merely "review[ed] and assisted with the content of the letters." (Guinn Mem. at 5.) Guinn argues that even though her name appears on the February 26, 1999 letter terminating Plaintiff's employment with the WTLA, that signature was not hers.[12] (Guinn Aff. ¶ 4.) Further, Guinn "assume[s] that the letter was signed using my name as I was the Secretary of the organization at that time." (*Id.*)

■ Plaintiff failed to offer evidence directly contradicting Guinn's sworn statement that she merely "review[ed] and assisted with the content of the letters" sent to Plaintiff. Thus, Plaintiff has not sufficiently established that Guinn "terminated" her or "eliminated" her part-time job with the WTLA. *See Chem Lab,* 554 F.2d at 372; *Data Disc,* 557 F.2d at 1284. Plaintiff has therefore failed to show that Guinn directed any intentional act of interfering with Plaintiff's business relationship with the WTLA into Arizona. *Bancroft & Masters,* 223 F.3d at 1087; *Panavision,* 141 F.3d at 1321; *Core–Vent,* 11 F.3d at 1486. Because Plaintiff has failed to establish that Guinn purposefully availed herself to Arizona for the claim of intentional interference with a business relationship, the Court cannot exercise jurisdiction over this claim and will dismiss the claim.

**c. False Light** [13]

■ In the Complaint, Plaintiff alleges that Guinn "refused to allow [Plaintiff] to

address the Board, explain what happened with the WTLA accounts, refute Defendant Bragg's allegations, as well as prohibited any other Board member from speaking on [Plaintiff's] behalf and in her defense." (Compl.¶ 62.) Plaintiff also states that Guinn intentionally "made it impossible" for Plaintiff to attend the Board meeting and to explain Bragg's statements. (Cummings Aff. ¶ 15.) Plaintiff alleges that these actions were "highly offensive to a reasonable person" and caused harm to Plaintiff. (Compl.¶ 63.) Under the effects test, these allegations sufficiently establish Guinn's purposeful availment for the false light claim. Plaintiff has properly alleged that Guinn directed her intentional actions at Plaintiff ultimately causing harm to Plaintiff, the brunt of which was suffered in Arizona. *Bancroft & Masters,* 223 F.3d at 1087; *Panavision,* 141 F.3d at 1321; *Core–Vent,* 11 F.3d at 1486.

**3. Guinn's Forum–Related Activities**

It is clear that "but for" Guinn's contacts with Arizona, Plaintiff's intentional infliction of emotional distress and false light causes of action would not have arisen. *Brink,* 57 F.Supp.2d at 861. If Guinn had not continually threatened to terminate Plaintiff while she was in Arizona or disallowed Plaintiff to clear her name by telephone in Arizona, Plaintiff's intentional infliction of emotional distress claim would not have arisen. Further, but for Guinn's refusal to allow Plaintiff to address the Board and explain what happened with the

---

**12.** Because Plaintiff has failed to offer any evidence to support the bare allegation that Guinn signed the February 26, 1999 letter, the Court will conduct its personal jurisdiction analysis assuming that Guinn did not sign the letter. *See Chem Lab,* 554 F.2d at 372; *Data Disc,* 557 F.2d at 1284.

**13.** Under Arizona law, a tort for false light requires Plaintiff to show:

One who gives publicity to a matter concerning another that places the other before the public in a false light is subject to liability to the other for invasion of his privacy, if (a) the false light in which the other was

placed would be highly offensive to a reasonable person, and (b) the actor had knowledge of or acted in reckless disregard as to the falsity of the publicized matter and the false light in which the other would be placed. Thus, the tort is established if the defendant knowingly or recklessly published false information or innuendo about the plaintiff that a reasonable person would find highly offensive.

*Hart v. Seven Resorts, Inc.,* 190 Ariz. 272, 947 P.2d 846, 854 (Ariz.App.1997) (citing *Godbehere v. Phoenix Newspapers, Inc.,* 783 P.2d at 784), *review dismissed by,* 191 Ariz. 297, 955 P.2d 534 (1998) (internal citations omitted).

WTLA accounts while Plaintiff was in Arizona, Plaintiff's false light claim against Guinn would not have arisen.

### 4. Reasonableness for Exercising Jurisdiction Over Guinn

Because Guinn purposefully directed her activities into Arizona, personal jurisdiction is presumed to be reasonable. *Brainerd*, 873 F.2d at 1259; *Lake*, 817 F.2d at 1423. Thus, Guinn must present a compelling case that would render Arizona's personal jurisdiction over her unreasonable. *Ballard v. Savage*, 65 F.3d 1495, 1500.

First, the extent of Guinn's interjection into Arizona is slight; Plaintiff's intentional infliction of emotional distress and false light claims against Guinn revolve around telephone conversations between Guinn and Plaintiff and Guinn's alleged refusal to allow Plaintiff to defend herself in front of the WTLA Board. Because Guinn's contacts with Arizona are attenuated, this factor weighs in favor of not exercising jurisdiction over Guinn. *Core–Vent*, 11 F.3d at 1488.

Second, the Court must consider the burden on Guinn of defending her lawsuit in Arizona. At the hearing on the motions, Guinn argued that she would endure the burden of defending this lawsuit in Arizona because she lives and works in California and that California exists as an alternative forum. The burden on Guinn defending this case in Arizona, however, is not substantially greater than the burden on Plaintiff in bringing her claims in California. *See Sinatra*, 854 F.2d at 1199 ("[T]he burden on the defendant must be examined in light of the corresponding burden on the plaintiff."). Further, although the Court acknowledges Guinn's burden under this analysis, her burden will not overcome clear justifications for the exercise of jurisdiction over her "unless the 'inconvenience is so great as to constitute a deprivation of due process.'" *Panavision*, 141 F.3d at 1323 (quoting *Caruth*, 59 F.3d at 128–29). Guinn's inconvenience is not so great as to deprive her of due process "in this era of fax machines and discount air travel". *Id.*

Thus, this factor does not weigh in favor of either party.

Third, no party has alleged that trying Plaintiff's case in Arizona will cause a conflict with the sovereignty of California, Guinn's homestate. This factor does not weigh in favor of either party.

Fourth, assessing the interest of the forum state, the state of Arizona maintains a strong interest in providing an effective means of redress for its residents. *See Data Disc*, 557 F.2d at 1288; *Core–Vent*, 11 F.3d at 1489; *Lake*, 817 F.2d at 1423. Thus, this factor weighs in favor of the Court exercising jurisdiction over Guinn.

Fifth, the Court must determine where the most efficient judicial resolution of the controversy would occur. In evaluating this factor, the Court should look primarily where the witnesses and the evidence are likely to be located, although this "is no longer weighed heavily given the modem advances in communication and transportation." *Panavision*, 141 F.3d at 1323; *Core–Vent*, 11 F.3d at 1489. Defendants allege that all WTLA records are located in California and that most of the witnesses are also located outside of Arizona. This factor therefore weighs in favor of not exercising personal jurisdiction over Guinn.

Finally, the Court must determine "whether an alternative forum exists, as well as the convenience and effectiveness of relief for the plaintiff.... The plaintiff bears the burden of proving the unavailability of an alternative forum." *Core–Vent*, 11 F.3d at 1490. Plaintiff has not provided the Court with any evidence that an alternative forum, such as a Colorado or California court, is unavailable. Further, the Court need not weigh Guinn's burden against Plaintiff's interest of trying the case in Arizona, where Plaintiff permanently resides. "A mere preference on the part of the plaintiff for its home forum does not affect the balancing; indeed, this factor is insignificant in this case." *Id.* The mere existence of an alternative forum, however, does not satisfy Guinn's burden of presenting a compelling case

that jurisdiction is unreasonable. *Myers v. Bennett Law Offices,* 238 F.3d 1068, 1075 (9th Cir.2001) (citing *Panavision,* 141 F.3d at 1322). Thus, this factor weighs only slightly in favor of Guinn.

 Because Guinn purposefully directed her activities into Arizona, Guinn is required to present a "compelling" case rebutting the presumption that personal jurisdiction over her is reasonable. *Brainerd,* 873 F.2d at 1259; *Lake,* 817 F.2d at 1423. Guinn has failed to rebut this presumption. While California may be a more efficient forum for judicial resolution of Plaintiff's claims, Arizona has a very strong interest in protecting its residents from torts causing injury in the state. *Brainerd,* 873 F.2d at 1260. Further, the jurisdiction over Guinn is not unreasonable simply because alternative forums exist. *See Lake,* 817 F.2d at 1423 ("Idaho's assertion of jurisdiction does not offend notions of fair play and substantial justice simply because there is another available forum."). On the balance, the Court finds that exercising personal jurisdiction over Plaintiff's intentional infliction of emotional distress and false light claims against Guinn does not offend traditional notions of fair play and substantial justice.

## C. Personal Jurisdiction Over Bragg [14]

Plaintiff brings the following causes of action against Bragg: (1) defamation; (2) intentional infliction of emotional distress; (3) intentional interference with her business relationship; and (4) false light.

### 1. Bragg's Purposeful Availment

Defendant Bragg, citing *Peterson v. Kennedy,* 771 F.2d 1244, 1262 (9th Cir. 1985), *cert. denied,* 475 U.S. 1122, 106 S.Ct. 1642, 90 L.Ed.2d 187 (1986), argues that all of the activities that Plaintiff alleges against him involved his use of the mail, telephone, or fax, while located in Colorado. (Bragg Mem. at 3.) Bragg asserts that under *Peterson,* these activities are not sufficient to establish that he purposefully availed himself to Arizona. (*Id.* at 3–4.) As stated previously, however, Ninth Circuit precedent establishes that the Court should analyze Bragg's purposeful availment under the effects test. *Panavision,* 141 F.3d at 1321; *Core–Vent,* 11 F.3d at 1486.

### a. Defamation

Plaintiff brings a defamation claim against Bragg by asserting that he "made false statements and unprivileged statements about [Plaintiff], knowing that they were false." (Compl.¶ 41.) Plaintiff alleges that on January 19, 1999, Bragg sent out a fax to fifty-two members of the WTLA "indicating that [Plaintiff] was purposefully trying to hide the financial condition of WTLA from its members." (*Id.* ¶ 31.) Plaintiff further alleges that in this fax, Bragg accused Plaintiff of co-mingling her personal funds with WTLA funds, misusing the WTLA credit card for her own personal use, and sending WTLA documents without authority to do so. (*Id.* ¶ 32.) Bragg admits that of the fifty-two letters, four were sent to Arizona residents. (Bragg Reply at 2.)

 Bragg is subject to personal jurisdiction in this Court because he intentionally directed allegedly defamatory letters toward Arizona which allegedly caused harm to Plaintiff.[15] *Bancroft & Masters,*

---

**14.** In the Complaint, Plaintiff alleges that from the beginning of Bragg's presidency with the WTLA on July 1, 1998, he "was verbally abusive and confrontational with Ms. Cummings." (Compl.¶ 15.) In July 1998, Plaintiff alleges that Bragg verbally attacked her in front of several WTLA members and numerous American Trial Lawyers Association lawyers for improperly managing the WTLA's accounts. (*Id.* ¶ 16.) Bragg's actions caused Plaintiff to become humiliated and

eventually break into tears. (*Id.* ¶ 17.) Because Plaintiff does not allege that any of these events occurred in Arizona, however, these allegations against Bragg do not support a finding of Bragg's minimum contacts.

**15.** Plaintiff argues that the false and unprivileged statements about her in these letters are the basis for her claim against Bragg for the tort of defamation. (Compl.¶¶ 41–44.) The content of these letters, however, also serves

223 F.3d at 1087; *Panavision*, 141 F.3d at 1321; *Core–Vent*, 11 F.3d at 1486. Each letter that Bragg directed to Arizona expressly discussed Plaintiff's "efforts to conceal the true condition of the organization" and that "the primary purpose of Western seemed to be to provide Kate Cummings with a job." (Bragg Jan. 19, 1999 Letter at 2.) Further, Bragg must have reasonably known that the harm arising out of his letters would be felt in Arizona, where Plaintiff lives and works. *See Brainerd*, 873 F.2d 1257, 1259 ("[The defendant] knew the injury and harm stemming from his communications would occur in Arizona, where [the plaintiff] planned to live and work.") These facts support the Court's conclusion that Bragg "purposefully availed" himself to Arizona with respect to Plaintiff's defamation claim. *Id.* at 1259–60 (holding that former employers purposefully availed themselves to Arizona when they allegedly defamed a Tucson resident by communicating the rumors surrounding the plaintiff's departure to a future employer in Arizona).

### b. Intentional Infliction of Emotional Distress

Plaintiff asserts this claim against Bragg because Bragg made "false defamatory statements and publish[ed] to at least 52 people despite having been notified that such statements were untrue[.]" (Compl.¶ 55.) The letters also allegedly caused Plaintiff harm in Arizona, including "depression, insomnia, nausea, a change in eating habits, feelings of betrayal and hopelessness." (*Id.* ¶ 56.) As stated previously, Bragg admits that he sent four of these allegedly defamatory letters to residents of Arizona.

 Under the effects test, Plaintiff's allegation of intentional infliction of emotional distress against Bragg is sufficient to establish purposeful availment. Merely because Bragg drafted and sent these letters from Colorado does not mean that

as the basis for Plaintiff's claims for intentional infliction of emotional distress (Compl.¶¶ 54–56.), intentional interference

Bragg did not direct his allegedly tortious actions into Arizona. *Brainerd*, 873 F.2d at 1260 ("The fact that there was no physical contact with California and that [the defendants'] actions all took place in Florida would not relieve them of personal jurisdiction where the effects of their Florida conduct were felt in California.") (discussing *Calder*, 465 U.S. at 790, 104 S.Ct. 1482.). Plaintiff has therefore sufficiently shown that Bragg intentionally sent defamatory letters to residents of Arizona causing harm to Plaintiff, the brunt of which was suffered and which Bragg knew was likely to be suffered in Arizona. *Bancroft & Masters*, 223 F.3d at 1087; *Panavision*, 141 F.3d at 1321; *Core–Vent*, 11 F.3d at 1486.

### c. Intentional Interference with Business Relationship

Plaintiff alleges that Bragg intentionally interfered with her business relationship with the WTLA when Bragg "purposefully and maliciously published false statements regarding [Plaintiff's] work performance to WTLA Board members and the entire organization." (Compl.¶ 58.) Plaintiff also asserts that Bragg removed money from a WTLA bank account located in Arizona, refused Plaintiff's marketing budgets, and then blamed Plaintiff for the WTLA's disorganized financial position. (*Id.*)

 Plaintiff's allegation of Bragg's intentional interference with her business relationship is sufficient to establish Bragg's purposeful availment. *Panavision*, 141 F.3d at 1321. Under the effects test, Plaintiff has alleged that Bragg intentionally directed allegedly defamatory letters into Arizona and intentionally interfered with Plaintiff's position as Executive Directory of the WTLA in Arizona, which ultimately caused Plaintiff's termination. *Bancroft & Masters*, 223 F.3d at 1087; *Panavision*, 141 F.3d at 1321; *Core–Vent*, 11 F.3d at 1486.

with a business relationship (Compl.¶¶ 57–60.), and false light (Compl.¶¶ 61–63.).

#### d. False Light

Plaintiff alleges that Bragg "willfully placed [Plaintiff] in a position that showed her in a false light when he sent out the letters stating the [Plaintiff] was incompetent, had misused or mismanaged funds, and participated in unethical behavior[.]" (Compl.¶ 61.) Plaintiff's allegations of false light also sufficiently establish Bragg's purposeful availment. *Panavision*, 141 F.3d at 1321. Under the effects test, Plaintiff has alleged that Bragg intentionally directed allegedly defamatory letters into Arizona "which would be highly offensive to a reasonable person." (Compl.¶ 63.) This ultimately caused harm to Plaintiff, the brunt of which Plaintiff suffered in Arizona. *Bancroft & Masters*, 223 F.3d at 1087; *Panavision*, 141 F.3d at 1321; *Core–Vent*, 11 F.3d at 1486.

#### 2. Bragg's Activities Arising Out of Forum–Related Activities

It is also clear that "but for" Bragg's contacts with Arizona, Plaintiff's four claims of relief against Bragg would not have arisen. *Brink*, 57 F.Supp.2d at 861. If Bragg had not drafted and intentionally sent four letters to WTLA members who resided in Arizona, Plaintiff's defamation, intentional infliction of emotional distress, intentional interference with business relationship, and false light claims would not have arisen.

#### 3. Reasonableness for Exercising Jurisdiction over Bragg

Because Bragg purposefully directed his activities into Arizona, personal jurisdiction is presumed to be reasonable. *Brainerd*, 873 F.2d at 1259; *Lake*, 817 F.2d at 1423. Thus, Bragg must present a compelling case that would render Arizona's personal jurisdiction over him unreasonable. *Ballard*, 65 F.3d at 1500.

First, the extent of Bragg's interjection into Arizona is not insubstantial; Plaintiff's claims against Bragg illustrate that Bragg interjected himself into Arizona on several occasions. Plaintiff alleges that Bragg removed all funds from the WTLA checking account in Arizona, causing several WTLA checks not to clear. Bragg also sent four letters into Arizona which serve as the basis for Plaintiff's defamation claim. This factor therefore weighs in favor of exercising jurisdiction over Bragg.

Second, the Court must consider the burden on Bragg in defending his lawsuit in Arizona. At the hearing on the motions, Bragg argued that he would endure a substantial burden because he lives and works in Colorado. The burden on Bragg defending this case in Arizona, however, is not substantially greater than the burden on Plaintiff if she brought this suit in Colorado or California. *See Sinatra*, 854 F.2d at 1199 ("[T]he burden on the defendant must be examined in light of the corresponding burden on the plaintiff."). Further, Bragg's inconvenience is not so great as to deprive him of due process "in this era of fax machines and discount air travel". *Panavision*, 141 F.3d at 1323. Thus, this factor does not weigh in favor of either party.

Third, no party has alleged that trying Plaintiff's case in Arizona will cause a conflict with the sovereignty of Colorado, Bragg's homestate. Thus, this factor does not weigh in favor of either party.

Fourth, assessing the interest of the forum state, the state of Arizona maintains a strong interest in providing an effective means of redress for its residents. *See Data Disc*, 557 F.2d at 1288; *Core–Vent*, 11 F.3d at 1489; *Lake*, 817 F.2d at 1423. Arizona has an interest in addition to the injury allegedly suffered by Plaintiff. "If the defamation occurred, the false statements were imparted to the . . . readers in Arizona, who were also injured." *Brainerd*, 873 F.2d at 1260. Thus, this factor weighs in favor of the Court exercising jurisdiction over Bragg.

Fifth, as stated previously, because most of the WTLA records are located in California and most of the witnesses are also located outside of Arizona, the most efficient judicial resolution of this case may

occur in a different forum. This factor therefore weighs in favor of not exercising personal jurisdiction over Bragg.

Finally, Plaintiff has failed to meet her burden of providing the Court with any evidence that an alternative forum, such as a Colorado or California court, is unavailable. *Core–Vent*, 11 F.3d at 1490. Again, this factor weighs in favor of Bragg.

■ Because Bragg purposefully directed his activities into Arizona, he is required to rebut the presumption that personal jurisdiction over him is reasonable. *Brainerd*, 873 F.2d at 1259; *Lake*, 817 F.2d at 1423. Bragg has failed to satisfy this burden. Although alternative forums exist, Arizona has a strong interest in protecting its residents from torts causing injury in the state. *Brainerd*, 873 F.2d at 1260. On the balance, Bragg has not provided the Court with a compelling case that would render jurisdiction unreasonable and the Court finds that exercising personal jurisdiction over Bragg does not offend traditional notions of fair play and substantial justice.

## II. Motion to File Reply Memorandum Out of Time

On October 2, 2000, Defendant Bragg filed a Motion to File a Reply, supporting his Motion to Dismiss, out of time. [Doc. # 34.] Bragg asserts that he did not receive Plaintiff's Response to his Motion to Dismiss until September 25, 2000. (Bragg Aff. ¶ 1.) In support of this assertion, Bragg attached a copy of the envelope containing Plaintiff's Response which allegedly bears a postmark of "September 22, 2000," more than two weeks after Plaintiff's Response was filed with the Court.[16] (*Id.* ¶ 2.) Conversely, Plaintiff argues that the "22" on the copy of the postmarked envelope "refers to the amount of the postage stamp on the letter, not the date." (Resp. at 1.)

Having analyzed the copy of the envelope provided by Bragg, the Court agrees

with Plaintiff that the "22" refers to the postage on the stamp. However, because the arguments in Bragg's Reply do not convince the Court to grant Bragg's Motion to Dismiss, the Court will grant Bragg's Motion to File Out of Time, because it will not prejudice Plaintiff.

Accordingly,

**IT IS ORDERED** that Plaintiff file an Amended Complaint within fifteen days from the date of this Order establishing that the WTLA's state of incorporation and its principal place of business are in states other than Arizona. If Plaintiff fails to comply with this Order, the Court may dismiss this action. *See Ferdik v. Bonzelet*, 963 F.2d 1258, 1260 (9th Cir.1992), *cert. denied*, 506 U.S. 915, 113 S.Ct. 321, 121 L.Ed.2d 242 (1992).

**IT IS FURTHER ORDERED** that Defendant WTLA's Motion to Dismiss is denied. [Doc. # 14.]

**IT IS FURTHER ORDERED** that Defendant Guinn's Motion to Dismiss is partially granted and partially denied. [Doc. # 8.] Guinn's Motion is granted with regard to Plaintiff's intentional interference with business relationship claim and is denied on all other grounds.

**IT IS FURTHER ORDERED** that Defendant Bragg's Motion to Dismiss is denied. [Doc. # 21.]

**IT IS FURTHER ORDERED** that Defendant Bragg's Motion to File Reply Memorandum Out of Time is granted. [Doc. # 34.]

---

**16.** Plaintiff filed her Response to Defendant Bragg's Motion to Dismiss on September 5, 2000. [Doc. # 27.]